**Marion James LINDEN, Appellant,**

v.

**Fred R. DICKSON, Warden, California State Prison, San Quentin, Appellee.**

**No. 16561.**

United States Court of Appeals Ninth Circuit.

March 24, 1960.

William L. Blaine, San Francisco, Cal., for appellant.

Stanley Mosk, Atty. Gen., Albert W. Harris, Jr., Deputy Atty. Gen., State of California, for appellee.

Before BONE, HAMLIN and KOELSCH, Circuit Judges.

HAMLIN, Circuit Judge.

Appellant, Marion James Linden, applied to the District Court for the Northern District of California, Southern Division, on August 5, 1959, for a writ of habeas corpus.[1] The petition for the writ alleged that the judgment and commitment under which the petitioner was being held were void. The petition alleged that on his trial, while being represented by court-appointed counsel, he requested that such counsel be removed and that he be allowed to conduct his own defense. The petition further alleged that the trial court granted his request and then alleged that at the time of his trial appellant was, by reason of insanity, incompetent to waive counsel, and that consequently he was deprived of his liberty without due process.

The petition further showed that appellant had been convicted of murder in the first degree and sentenced to death, the execution being scheduled for 10 a. m., August 7, 1959. It also appeared that appellant's conviction had been affirmed by the Supreme Court of California and that his petition for certiorari to the Supreme Court of the United States had been denied, and that appellant had exhausted his state remedies.[2] It was stipulated by counsel at the time of argument before this court that when counsel for appellant presented the petition for the writ of habeas corpus to the District Judge that he also presented to him at the same time a copy of the opinion of the Supreme Court of California affirming appellant's conviction. Under California law, after conviction in capital cases, there is an automatic appeal to the Supreme Court of California. The appellant in such appeal is furnished with a transcript of all the proceedings of the trial in the lower court, including the testimony of witnesses. There is no contention this record was not available to appellant and his counsel at the time of the application for the writ, but no part of the transcript was presented to the District Judge, who, after considering the documents handed to him and without granting an order to show cause, denied appellant's application. The District Judge did not call for or examine the transcript and did not hold a hearing.

This appeal followed and it is conceded this court has jurisdiction of the appeal.

The appellant in his brief raises two questions: (1) whether the District Court upon application for a writ of habeas corpus by a prisoner convicted

---

1. Present counsel for appellant was appointed by this court to represent appellant on February 10, 1959.

2. It appears from the briefs on this appeal that the application for certiorari was not acted upon, but that an accompanying request for stay of execution was denied.

of a capital offense in a state court, who alleges a deprivation of due process under the Fourteenth Amendment to the United States Constitution, can deny the writ without granting a hearing or reviewing the record of the trial; and (2) assuming that this question is answered in the affirmative, whether the District Court erred in denying the application for a writ of habeas corpus.

██ Appellant first submits that a District Judge cannot refuse an application for a writ of habeas corpus without either holding a hearing or examining the transcript of the trial proceedings. This is obviously too broad. "If the claim is frivolous, the judge should deny the application without more." Brown v. Allen, 344 U.S. 443, 504, 73 S.Ct. 397, 445, 97 L.Ed. 469 (opinion of Justice Frankfurter). Appellant next relies on United States ex rel. De Vita v. McCorkle, 3 Cir., 1954, 216 F.2d 743, 745, apparently for the proposition that unless the application is denied as frivolous the District Judge cannot refuse an application for a writ of habeas corpus without either holding a hearing or examining the transcript of the trial proceedings, and that where, as here, he goes beyond the face of the petition and considers the state court opinion affirming the petitioner's conviction, he is committed to either holding a hearing or examining the transcript.

While it is true that the Court in McCorkle held that in that case the District Judge should have either examined the transcript of the trial or held a hearing, we believe the case may be distinguished from this.

There it was plain the District Judge "thought it necessary to inquire into the merits of the application but apparently felt himself so circumscribed by the time element that he rendered his decision on the basis of what he had then before him

of the state court proceedings, namely, the state court opinion alone," which he accepted as the state court record or a substitute therefor. In McCorkle the Court pointed out that the District Judge stated, "I shall have to deny the writ peremptorily" and stated in referring to his power to grant a stay of execution "[he] may have mistakenly assumed that he was under a duty of disposing of the issue immediately." From the opinion in McCorkle it seems the District Court wanted to fully investigate the merits of the application, but failed to do so as he felt himself circumscribed by time. That situation is not present here. There is nothing to indicate the District Judge thought it necessary to inquire into the merits of the application beyond the fact he considered the state court opinion which counsel handed to him, or that he felt it was necessary for him to act "peremptorily." Had he felt it necessary to further investigate the merits of the application, the able District Judge, with many years of experience in these matters on the District Court, unquestionably knew of his power to grant a stay.

In McCorkle, the Court pointed out that the District Judge regarded the petition as raising a substantial question "by his certification of the action as possessing probable cause for appeal." In this case, on the contrary, the District Judge certified there did not exist probable cause for appeal.[3]

In this case the petition for the writ contained no allegations of facts purporting to show appellant was incompetent to waive counsel. This petition may be contrasted with that in McCorkle, where the facts of the alleged unfairness of the trial were set out with particularity and in detail in the petition for the writ.[4]

3. On August 6, 1959, a Judge of this court issued a certificate of probable cause in order that we might render a decision on the question "whether the district court was warranted in disposing of the petition solely on the basis of the

opinion of the Supreme Court of California."

4. "Those grounds were that the trial juror's fraudulent concealment on voir dire of allegedly disqualifying facts and

Appellant's counsel had represented him for approximately six months prior to the filing or presentation of the application for a writ of habeas corpus on August 5, 1959, and with the full record available to appellant and his counsel, facts, if they existed, could have been set out in detail to establish the contention that appellant was, at his trial, incompetent to waive counsel.

The District Court read the opinion of the Supreme Court of California, which counsel handed to him. This opinion, which covers some nineteen printed pages (People v. Linden, 52 Cal.2d 1, 338 P.2d 397–416), exhaustively covered all the points raised by appellant on his appeal.

This opinion sets out in detail the proceedings surrounding the waiver of counsel by appellant during the trial. It appears from the opinion that counsel represented appellant without objection until the fifth day of the trial. Appellant then twice interrupted the proceedings with requests to personally make motions and to cross-examine. When the appellant asked "to appear and defend myself in person", the Court excused the jury. Appellant explained that counsel "did not want to go on with the case the way I wish," and asked that his attorney be relieved. In making this request, the appellant incidentally stated of his counsel that he "has been very fair with me and he has been a very good attorney," to which the trial judge responded, "Yes, he has." The opinion then sets out that thereafter, following considerable colloquy, the Court, with appellant's assent, reserved rulings on the questions of relieving appellant's counsel and his further representation until The People had concluded their case. The jury was then recalled and The

People presented a little more evidence, after which they rested.

The Court then, out of the presence of the jury, fully and correctly advised appellant concerning his right to counsel. He then ruled that he would not appoint new counsel at the late stage in the proceeding. He, however, relieved appellant's trial counsel as attorney of record and, with his consent and express recognition of the difficult position in which he was placed, appointed him as legal advisor. There is then set out in detail the substance of considerable discussion between appellant and the Court and the prosecutor as to what evidence appellant was going to produce. The process of the court was offered to him for subpoenaing witnesses, and appellant's advisor offered to prepare the subpoenas and give them to the sheriff for a particular witness. However, when court reconvened, in response to a question from the Judge, "Do you wish to call your witness now?" appellant, without suggesting that he wished to offer any evidence, replied, "The defense rests."

On appeal to the Supreme Court of California appellant's new court-appointed counsel raised the question for the first time as to whether appellant understood the issues and available defenses and had the capacity to effectively waive counsel as required by Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

The Supreme Court of California in its opinion exhaustively discussed this contention and after setting out the proceedings and evidence in great detail, stated:

"Before the trial Court allowed defendant to represent himself, it held lengthy discussions with him and had ample opportunity to ob-

his untruthful answers with respect thereto indicated such bias and prejudice on his part that DeVita was deprived of a fair trial by an impartial jury contrary to the Fourteenth Amendment of the Federal Constitution. The facts so concealed or falsified were stated to be that the juror had himself been a victim of a

strikingly similar armed robbery within a year of the trial, and that as a result he knew a number of detectives who it is strongly inferred were from the same specialized field of criminal investigation in the municipality which had been the locale of both offenses."

serve his abilities and disabilities. As in People v. Mattson (1959), supra, at pages 788, 793 of 51 Cal.2d, 336 P.2d at pages 945, 949, '* * * the entire record establishes that defendant was fully aware of his situation when he insisted upon representing himself, and the court was not required to demand that defendant, as a prerequisite to appearing in person, demonstrate either the acumen or the learning of a skilled lawyer. No abuse of discretion is shown.' "

If any of the facts set forth in the opinion were not true or in any way were not supported by the transcript of the proceedings, or if there were any additional facts which would have supported the contention in the petition, it would have been a simple matter for appellant's counsel to have so alleged.

We do not mean to say that a petitioner for habeas corpus in all cases vouches for the accuracy of the statements contained in a state court opinion unless he specifically controverts such portions of the state opinion as he feels to be in error. However, where counsel for a petitioner presents a state court opinion to the District Judge accompanied by a petition containing no specific factual allegations controverting or supplementing a state court opinion which has given full consideration to the identical constitutional claim presented in the petition for the writ, the District Court may be justified in disposing of the petition without going further. As said in United States ex rel. Smith v. Baldi, 1952, 344 U.S. 561, 569, 73 S.Ct. 391, 395, 97 L.Ed. 549:

" * * * not 'unless special circumstances prevail, should the lowest federal court reverse the highest state court in * * * an opinion specifically setting forth its reasons that there has been no denial of due process of law, and where the record before the state court and the allegations in the petition for the writ before the federal court fail to disclose that the state in its prosecution departed from the constitutional requirements * * *.' "

Under the circumstances of this case, we hold the District Court was justified in disposing of the application on the basis of the allegations in the application and the opinion of the Supreme Court of California. Whether the District Judge could have denied the application, without more, as alleging a frivolous claim, is not before us, but as the case stands, we do not think that by considering the state court opinion the District Judge thereupon became required to either hold a hearing or call for and examine the state court transcript. "The very nature and function of the writ of habeas corpus precludes the formulation of fool-proof standards" to be automatically applied (opinion of Justice Frankfurter in Brown v. Allen, supra, 344 U.S. 501, 73 S.Ct. 443) and it would introduce an undue rigidity to hold that unless the District Judge is justified in dismissing the application as frivolous without more, and in fact does so, he must hold a hearing or consider the trial transcript. Such a hard and fast rule could well breed the tandem ills of according excessive attention to applications which allege a good claim but may quickly be demonstrated to be unworthy, or insufficient attention to inartfully drawn but possibly worthy claims that could, strictly viewed, be dismissed as "frivolous." We think the District Judge went as far as reason and good conscience require, and that this holding is in accord with the teaching of Brown v. Allen.

In that case, in all three of the cases considered by the Court, there had been presented to the District Judge a record of the proceedings in the trial court, so that the actual question now before this court was not there present. The Supreme Court did, however, discuss for the guidance of lower courts in the future, what should be the procedure to be followed where a state prisoner applies to a District Judge for a writ of habeas corpus.

The procedure was discussed by more than one Justice, but none of them in our

opinion indicated that the procedure contended for by appellant is required. The following excerpts from the opinion by Justice Reed are illustrative of how the Court felt such applications should be handled.[5]

"Jurisdiction over applications for federal habeas corpus is controlled by statute. The Code directs a court entertaining an application to award the writ. But an application is not 'entertained' by a mere filing. Liberal as the courts are and should be as to practice in setting out claimed violations of constitutional rights, the applicant must meet the statutory test *of alleging facts that entitle him to relief*.

"The word 'entertain' presents difficulties. Its meaning may vary according to its surroundings. In § 2243 and § 2244 we think it means a federal district court's conclusion, *after examination of the application with such accompanying papers as the court deems necessary*, that a hearing on the merits legal or factual is proper." 344 U.S. at pages 460, 461, 73 S.Ct. at page 409.

"Applications to district courts on grounds determined adversely to the applicant by state courts should follow the same principle—*a refusal of the writ without more, if the court is satisfied, by the record*, that the state process has given fair consideration to the issues and the offered evidence, and has resulted in a satisfactory conclusion. *Where the record of the application affords an adequate opportunity to weigh the sufficiency of the allegations and the evidence*, and no unusual circumstances calling for a hearing are presented, a repetition of the trial is not required." 344 U.S. at page 463, 73 S.Ct. at page 410.

" * * * As the state and federal courts have the same responsibilities to protect persons from violation of their constitutional rights,

we conclude that a federal district court may decline, without a rehearing of the facts, to award a writ of habeas corpus to a state prisoner where the legality of such detention has been determined, *on the facts presented*, by the highest state court with jurisdiction, *whether through affirmance of the judgment on appeal* or denial of post-conviction remedies." 344 U.S. at page 465, 73 S. Ct. at page 411.

Justice Frankfurter, in discussing the problem, said on page 500 of 344 U.S., at page 443 of 73 S.Ct.:

" * * * the District Judge must take due account of the proceedings that are challenged by the application for a writ. All that has gone before is not to be ignored as irrelevant. But the prior State determination of a claim under the United States Constitution cannot foreclose consideration of such claim * * *. A State determination may help to define the claim urged in the application for the writ and may bear on the seriousness of the claim. That most claims are frivolous has an important bearing upon the procedure to be followed by a district judge. The prior State determination may guide his discretion in deciding upon the appropriate course to be followed in disposing of the application before him."

Justice Frankfurter further states at page 501 of 344 U.S., at page 443 of 73 S.Ct.:

"Of course, experience cautions that the very nature and function of the writ of habeas corpus precludes the formulation of fool-proof standards which the 225 District Judges can automatically apply. Here as elsewhere in matters of judicial administration *we must attribute to them the good sense and sturdiness appropriate for men who wield the power of a federal judge*."

---

**5.** Emphasis ours in all cases.

In setting out standards which should govern the District Judges, Justice Frankfurter, at pages 502–504 of 344 U.S., at page 443 of 73 S.Ct., states:

"First. Just as in all other litigation, a prima facie case must be made out by the petitioner. The application should be dismissed when it fails to state a federal question, *or fails to set forth facts which,* if accepted at face value, *would entitle the applicant to relief."*

\* \* \* \* \* \*

"Third. If the record of the State proceedings is not filed, the judge is required to decide, with due regard to efficiency in judicial administration, whether it is more desirable to call for the record or to hold a hearing. \* \* \*

" \* \* \* *It seems an unnecessary deference to State proceedings to say that the District Judge,* regardless of the relative expense of one procedure or the other, *must always call for everything in the State proceedings.* To satisfy requirements of exhaustion *he will want to know enough to know whether the claim presented to him was presented in the State courts.* But if the claim is either frivolous or, at the other extreme, substantial and if the facts are undisputed, to call for the State record would probably avail little. If the claim is frivolous, the judge should deny the application without more. *If the question is one on which he must exercise his legal judgment* under the habeas corpus statute, *it may be sufficient to have information, perhaps presented by the pleadings of the applicant or of the State, as to the disposition of any disputed questions of fact. It seems unduly rigid to require the District Judge to call for the State record in every case."*

At page 505 of 344 U.S., at page 445 of 73 S.Ct. Justice Frankfurter stated:

"The proviso that no writ or order need be issued if the application shows that the applicant is not entitled thereto certainly permits 'entertaining' and nevertheless summarily dismissing for failure to state a claim, failure to exhaust State remedies, or proof of the papers themselves, including the record of the State proceedings, if filed, that there is no claim. At the same time, *the command that the writ or an order be issued in some cases hardly requires a hearing in every such case. As in any litigation, the pleadings may show, either separately or taken together, that there is no claim.* \* \* \*

"Fourth. When the record of the State court proceedings is before the court, it may appear that the issue turns on basic facts and that the facts (in the sense of a recital of external events and the credibility of their narrators) have been tried and adjudicated against the applicant. *Unless a vital flaw be found in the process of ascertaining such facts in the State court, the District Judge may accept their determination in the State proceeding and deny the application."*

Justice Jackson, in the same case, commented as follows: (344 U.S. at page 547, 73 S.Ct. at page 430)

" \* \* \* every petition to a federal court is required \* \* \* *to contain a plain but full statement of the facts* on which it is based. *Unless it states facts which, if proved, would warrant relief, the applicant is not entitled as of right to a hearing."*

As indicated by the above excerpts we do not believe that Brown v. Allen requires in all cases the examination of the transcript of the proceedings below or a hearing before the District Judge. The necessity of alleging sufficient facts is stressed by the Court in several places.

If the mere filing of a petition, particularly where, as here, it alleges only a conclusion, is sufficient to require the examination of the transcript or the call-

ing of a hearing it would mean that in all cases where a last minute application is made (as is so frequently done), the District Judge must of necessity grant a stay of execution so that an examination of the transcript could be made or a hearing could be held.

We do not believe that this is or should be the rule.

In this case, the application did not allege any facts supporting the conclusion of counsel, although the entire transcript was available to appellant and counsel. It did not, as suggested by Justice Reed, allege *"facts* that entitled him to relief" nor as suggested by Justice Frankfurter did it "set forth *facts* which * * * would entitle the applicant to relief", nor did it contain as Justice Jackson suggested "a plain but full statement of the *facts* on which it is based." [Emphasis ours.]

We do not believe that the use of the word "record" as found in various parts of the opinion means the entire transcript of the proceedings in the State court. The word was used with different meanings in various places. Justice Reed indicates that the District Judge may act after "examination of the application with such accompanying papers as the court deems necessary." Justice Frankfurter states that the "pleadings may show * * * that there is no claim." He further states that the District Judge need not "always call for everything in the State proceedings * * * *he will want to know enough to know whether the claim presented to him was presented in the State courts."* [Emphasis ours.]

In this case, the "accompanying papers" handed to the District Judge by counsel with the application was the opinion of the Supreme Court of California. In that opinion the claim of counsel for appellant was exhaustively considered. The opinion discussed in de-

tail appellant's waiver of counsel and the statements of his desire to represent himself. Nothing that the California Supreme Court stated in its discussion of the facts was in any way controverted or supplemented by appellant or his counsel in the application for habeas corpus.

We hold that under these circumstances the District Judge did not err in proceeding to dispose of the application of appellant on the basis of the application and the "accompanying paper", the opinion of the Supreme Court of California.

The second point raised in counsel's brief is whether, assuming the District Judge has the right to deny the writ without holding a hearing or examining the entire transcript, the District Court erred in denying the application for writ of habeas corpus. We hold that he did not.

Earlier in this opinion, some of the discussion of the California Supreme Court in its opinion was set out. In addition, it might be pointed out that the opinion disclosed, *inter alia,* the following facts. The appellant had become involved in a fight in a Los Angeles bar. After being removed therefrom by a police officer, he was searched for weapons, and upon none being found was told to go home. Later that night when the same police officer found appellant outside the bar he, after patting "him on the sides again," went to a police callbox. The appellant stepped to the officer's side, shot him twice at close range, and ran to his parked car and drove away. The officer later died. A bystander followed appellant's car and alerted motorcycle officers on the way who stopped appellant's car and arrested him. He admitted then that he had just shot an officer. Later, to the officers, he again admitted the shooting, stating that he intended to kill the officer.[6] He further stated that three years before he had been "framed" by two policemen on a charge of "interfering with an officer;"

---

6. No contention was made that these confessions were coerced. In fact, the appellant in arguing the case to the jury again admitted the killing, saying, "I am responsible for his death. It is something I will be guilty of for the rest of my life. It is also something I have to answer to later."

that while he was doing a 90-day sentence on that charge, he made up his mind that he was going to kill a police officer—that it took the jury eight hours of deliberation on a misdemeanor charge to convict him—and that he was very tough to beat, that he had beaten one other murder rap and "he was going to be very hard to convict on this charge."

Later, in another conversation, which was tape recorded, appellant said that "he was not talking about himself; he was talking about a fictional character who had served 90 days on a bum rap, and then made up his mind to kill a police officer."

On the trial, when at appellant's request the tape recording of this latter conversation was admitted in evidence, appellant asserted "that is not my voice on that recording." This tape recording contained no admissions of appellant as to the shooting of the police officer or of his intent to kill the police officer. It was during the discussion concerning this tape recording that appellant "asked to appear and defend myself in person," stating, in the absence of the jury, that his counsel "did not want to go on with the case the way I wish," and that he (counsel) did not believe the tape was "framed."

The Supreme Court discussed in detail the conduct of appellant, both before trial and during the trial. It pointed out that the appellant, prior to the time that he had obtained the counsel who represented him during the trial "presented the untenable but not naive argument (since rejected in People v. Mattson (1959), supra, 51 Cal.2d 788, 336 P.2d 937, 945, 946,) * * * that his state constitutional (Art. I, § 13) and statutory (Pen.Code, § 686) right to 'appear and defend, in person and with counsel' was 'conjunctive' and entitled him to conduct his case personally and at the same time to be furnished the advice of an at-

torney; he evidenced alertness to protect his rights by his reiterated requests for an attorney to advise him whether the indictment was subject to demurrer or motion to set it aside."

■ The constitutional right to counsel does not justify forcing counsel upon an accused who wants none. Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167.

■ We do not have the case here of a person inexperienced in court proceedings. It was pointed out that the defendant had two prior felony convictions and that the appellant had said that "he had beaten one other murder rap" and that he was "going to be very hard to convict on this charge." In considering the complete discussion by the Supreme Court of the circumstances surrounding the waiver by the appellant of his counsel, the request that such counsel be discharged, and that he have advisory counsel, there is found nothing which in any way establishes any lack of competence on the part of appellant to waive counsel.[7]

As we have indicated earlier, also there was nothing whatever in the application for the writ of habeas corpus which in any way controverted any of the statements of the Supreme Court in its opinion as to what occurred during the trial. Nor did appellant contend that the Supreme Court had omitted to set forth anything in the opinion which might be considered to be in his favor.

Under the circumstances of this case, we find no error in the action of the District Court in disposing of the application for the writ of habeas corpus upon consideration of the appellant's application and the opinion of the Supreme Court of California, nor in its denial of such application.

The judgment is affirmed.

---

7. As was said in Williams v. Swope, 9 Cir., 1951, 186 F.2d 897, 898:

"We detail the criminal record and court experiences of petitioner, not as an argument that he should not be ac-

corded his full and complete constitutional rights, but to shed light upon the problem confronting us as to whether the petitioner was sufficiently advised of his right to counsel * * *."