YOUNG *v.* STATE

[No. 213, September Term 1961.]

*Decided March 21, 1962.*

The cause was argued before HENDERSON, PRESCOTT, HOR-NEY, MARBURY and SYBERT, JJ.

*Marshall A. Levin,* with whom was *Harry O. Levin* on the brief, for appellant.

*Gerard Wm. Wittstadt, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Saul A. Harris, State's Attorney,* and *James W. Murphy, Assistant State's Attorney,* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was convicted of rape in a trial before the court without a jury, and after his motion for new trial had been overruled by the Supreme Bench, sentenced to death. Young was indicted for rape on December 22, 1960, and on the same day a joint indictment for burglary was filed against Young, James Bowler and Earl James Boston. The defendants received copies of the indictments on December 27, 1960,

and were arraigned on December 29, 1960. Apparently counsel were appointed for Bowler and Boston, but Young retained his own counsel. The cases were set for trial on February 20, 1961, and tried together. There was no motion or request for a separate trial.

The State produced the testimony of the prosecuting witness to the effect that she was asleep in her apartment at about 11 o'clock on the morning of November 29, 1960, when she was awakened by a man on top of her who told her to "keep her head down." He told her he had a knife. He had thrown an article of clothing over her head and threatened to kill her. She heard others in the room, but they evidently left, for the noise ceased. Her assailant then had intercourse with her, although she resisted and received scratches on her neck and forehead. When he left she went to a telephone downstairs and called the police. She identified her assailant in a police line-up a few days later, by his voice. Medical testimony was to the effect that penetration had occurred.

The State produced a statement made by Young in which he stated that in company with Bowler and Boston he went to the apartment and the others took a record player of the prosecuting witness and a suitcase, while he took her radio. He stated that she solicited him to have intercourse with her. He had never seen the woman or been in the apartment before. After intercourse, he went out with the radio and joined the others. They pawned the record player for thirty dollars, after Young had given his "identification" to the broker. They split the money three ways. After testimony from three police officers as to the circumstances surrounding the interrogation, the statement was admitted. Young's counsel did not challenge the voluntariness of the statement, but did object on the ground that the length of detention, and three periods of questioning, rendered it inadmissible.

The testimony of all the officers was to the effect that there had been no mistreatment, threats made or inducements offered. Young had been arrested early in the morning of December 2, 1960. They recovered the record player and other articles upon information supplied by Young. After three short periods of intermittent questioning, Young gave the

statement at about 8 P. M. on the same day. He had been "confronted" with Bowler and Boston at about 5 P. M. They had made statements earlier in the day.

The statements of Bowler and Boston were offered in evidence over objection of counsel for Young. The court admitted them "only as to Boston and Bowler, not against Young".

Bowler and Boston were found guilty on the burglary charge and each was sentenced to ten years. Young was found guilty of rape and burglary, but the verdict as to rape was striken out by the trial judge, of his own motion, because of an incident that occurred before the close of the case. It appears that counsel for Young stated that his client did not desire to take the stand, but when the court questioned Young as to the matter, Young replied that he did. But when his counsel stated that he was surprised, Young said he would abide by his counsel's decision. The court then rendered its verdict and a motion for new trial was filed. But when the court indicated that it was willing to strike the verdict, counsel for Young agreed, and voluntarily dismissed the pending motion for a new trial. After a continuance of a few days, the case was resumed and Young took the stand. He admitted having intercourse with the prosecuting witness at the time alleged in the indictment, but swore for the first time that he had had voluntary intercourse with her on two previous occasions. He reiterated that she had solicited the intercourse on the occasion in question, denied taking the radio, which was among the articles recovered and offered in evidence, and denied making the statements attributed to him by the other codefendants in the burglary case. The State brought out in cross-examination that Young had a long criminal record. The trial court again found Young guilty of rape and, after a new trial had been denied, sentenced him to death. On this appeal Young was represented by new counsel of his own selection.

The appellant contends that the procedure whereby the first verdict was stricken out and the accused allowed to testify was irregular and constituted prejudicial error. We do not agree. The vacillating statements of the accused as to whether he desired to testify or not were sufficient, we think, to raise a reasonable doubt as to what his wishes really were, and we

find no abuse of the discretion reposed in the trial court and no showing of prejudice. Cf. *Stansbury v. State,* 218 Md. 255, 262. After an opportunity for further reflection and consultation, he did take the stand, as he had a right to do in the first instance. He was thus enabled to contradict some of the matters in his statement to the police, as to his lack of previous association with the prosecuting witness, and thus strengthen his real defense of consent.

He did not contend that the statement was involuntary, but said that the police did not record it properly, although he admitted reading and signing it. The interrogation was not so lengthy or so intense as to render it involuntary. Cf. *Merchant v. State,* 217 Md. 61, 69; *Hall v. State,* 223 Md. 158, 170, and cases cited.

The chief contention of the appellant on this appeal relates to the admission of the confessions of the codefendants in the burglary case. It is well established in this State that in a joint trial the confession of one of several defendants may be introduced in evidence, provided the court instructs the jury that the confession is only evidence against the one making it, not evidence against the codefendants. *Markley v. State,* 173 Md. 309, 318; *Jackson v. State,* 180 Md. 658, 665; *Taylor v. State,* 187 Md. 306, 316. Cf. *Shockley v. State,* 218 Md. 491, 495, and *Gray v. State,* 219 Md. 557, 558.

In the recent case of *Shorey v. State,* 227 Md. 385, indictments for rape and burglary against a single defendant were tried together without objection. See also *Williams v. State,* 214 Md. 143, 152. There was no objection in the instant case. Nor was there any motion or request for a separate trial. This in itself distinguishes the case from *Day v. State,* 196 Md. 384, 395, relied on by the appellant. See also *McElroy v. United States,* 164 U. S. 76 and the cases collected in a note, 59 A. L. R. 2d 858. We have been referred to no case, and we have found none, where, in the absence of a motion for severance or separate trial, a conviction has been reversed. Even constitutional rights may be waived, and in the absence of a reservation of the point in the trial court, it is not before us on appeal. Cf. *Jackson v. Warden,* 218 Md. 652, and *Martel v. State,* 221 Md. 294. Moreover, in *Day v. State, supra,* it

was shown at the time of the motion that defendant's defenses were hostile and that the State had conflicting statements in its possession that would be distinctly harmful if offered in a joint trial. There was no such showing in the instant case, and there is no claim that the State withheld any information as to the statements in its possession, as in *Brady v. State,* 226 Md. 422, 427.

In any event we think there was no prejudice in the introduction of the statements of the codefendant. A careful comparison of Young's testimony on the stand and the two statements of the codefendants indicates the following: Young testified that he suggested going to the apartment and led the way. Bowler's statement was in accord, and so was Boston's. This tended to corroborate Young's statement that he had been there before. Young testified that the prosecuting witness woke up when Boston knocked over some records. Bowler had already left, as he said in his statement. Boston was still standing by the bed. Boston's statement was that Young "didn't seem scared or nothing, just like we should be there." He left when Young told him to. When Young came out a few minutes later, he said "She liked it." They called a cab. Young had nothing in his hands. Boston also stated that Young put nothing over the woman's head, just his hand over her mouth and told her to keep quiet. Young was still holding the woman when Boston left. Young's version was that when the woman woke up she recognized him and smiled. She put her arms around his neck and made no outcry. He did not explain the scratches.

We find little in the statements of Bowler and Boston to contradict his own admissions on the stand, or his defense of consent. He admitted the intercourse. Fundamentally, the case against Young for rape rests upon the testimony of the prosecuting witness and the circumstantial evidence, including the prompt report, the scratches, and the unlikelihood of consent under the circumstances. We cannot say that the verdict of the trial court was clearly erroneous. Maryland Rule 741 c.

*Judgment affirmed.*