Norwood B. Orrick (court appointed), Baltimore, Md., for petitioner.

Thomas B. Finan, Atty. Gen. of Maryland, Robert C. Murphy, Deputy Atty. Gen., and Robert F. Sweeney, Asst. Atty. Gen., Baltimore, Md., for respondent.

**James BOWLER**

v.

**WARDEN, MARYLAND PENITENTIARY.**

Civ. No. 13891.

United States District Court
D. Maryland.

July 1, 1963.

THOMSEN, Chief Judge.

Petitioner (Bowler) was jointly indicted with Earl Boston and George Terry Young in the Criminal Court of Baltimore City on five counts charging them, inter alia, with breaking and entering on November 29, 1960, in the daytime, with felonious intent, the dwelling of Mrs. Freddie Jean Johnson (a misdemeanor—Anno.Code of Md., Art. 27, sec. 32), and with the felonious larceny of certain goods, including a combination stereo hi-fi record player belonging to Mrs. Johnson (a felony—Art. 27, sec. 340). Young was separately indicted for rape and assault upon Mrs. Johnson during the course of the burglary and larceny.

Emory Cole, Esq., was employed (privately) by Young to act as his trial counsel. Alva Weaver, Esq., was ap-

pointed by the Court to represent Bowler and Boston. No severance was requested, and the cases were tried together before the Court without a jury. Bowler and Boston were found guilty on all counts of the indictment except the receiving count, and each was sentenced to ten years' imprisonment. Young was found guilty of burglary and rape, and a death sentence was imposed.

No appeal was taken by Bowler, but Young's conviction was affirmed. Young v. State, 228 Md. 173, 179 A.2d 340.

Bowler filed an application under the Maryland Post Conviction Procedure Act, Anno.Code of Md., Art. 27, §§ 645A–645J, raising nine points. His application was denied by the Criminal Court of Baltimore, and leave to appeal was denied by the Court of Appeals of Maryland. Bowler v. Warden, 228 Md. 662, 180 A.2d 878.

Bowler then filed a petition for a writ of habeas corpus herein, contending, inter alia: (1) that his confession should not have been admitted against him at the trial because it was the fruit of an unlawful arrest; and (2) that his trial counsel was incompetent. This Court appointed Norwood B. Orrick, Esq., to represent Bowler in this proceeding; he and his associate, Charles W. Gilchrist, Esq., filed two helpful briefs and presented evidence and oral argument on the first point; they also assisted Bowler in presenting his evidence and argument on such other points as he wished to bring to the Court's attention, although after thorough investigation they did not feel justified in arguing those points themselves.

On November 30, 1960, Mrs. Freddie Jean Johnson reported to the police that her home at 2420 N. Charles St., Baltimore, had been entered, that she had been raped, and that a Motorola record player of specified style and color, a clock radio and a suitcase had been taken. She said that only one man entered her room, but that she heard noises in the background which indicated that one or more other men were in the apartment.

On December 1, the police were advised that a record player exactly answering the description of the one reported stolen from Mrs. Johnson had been pawned on Pennsylvania Ave., in Baltimore, by George Terry Young. The police arrested Young at 3:00 a. m. on December 2, and about 10:30 a. m. Young told the police that while he was walking on Pennsylvania Ave. a stocky, wooly-haired, brown-skinned man, wearing a red sweater, known to Young as "Walt", asked Young for some "identification" so that he could pawn a record player which he and "Earl" had stolen, and Young loaned Walt his "union book" to serve as such identification. Young said he did not know Walt's full name or address, but that Earl, who lived at 1512 Eutaw Place, knew Walt. A uniformed sergeant of police and two detectives promptly went to 1512 Eutaw Place, where they were told that within the past few days Earl Boston had moved from 1512 to 1502 Eutaw Place. The three policemen went immediately to 1502 Eutaw Place and knocked on the door of Boston's one room apartment; when asked who they were, they replied "the police", and were admitted to the room, in which they found five Negro men. The police said they were investigating a burglary. Earl Boston identified himself, and, in reply to an inquiry by the police, said that he knew no one named Walt. The police noticed, however, that a man whom they did not then know by name but who turned out to be James Bowler fitted the description of Walt, and had a red jacket. The police arrested both Boston and Bowler, who without protest allowed themselves to be driven to the Central Police Station, where they were booked for "investigation: assault". The time of arrest was given as 12:00 noon.

The men were placed in adjoining cells in the interrogation area. Boston was interviewed first; he confessed his participation in the burglary but denied participation in the rape. His statement was completed at 2:20 p. m. Shortly thereafter Bowler's interview began.

There was no coercion of any kind except that he was under arrest. Bowler first denied any part in the affair, but after Earl Boston was brought in and had told Bowler that he had confessed and had advised Bowler to give a statement, Bowler admitted carrying off one of the items taken but denied participation in the rape. Bowler's statement was begun at 3:50 p. m., completed at 4:40 p. m. and signed by Bowler at 4:50 p. m. Young and Bowler were not brought together until 5:35 p. m., although Bowler saw Young when the former was brought into the cell areas of Police Headquarters.

■ In his testimony in this Court Bowler admitted carrying off the valuable hi-fi record player, but said he did not think it was stealing, although he did not claim it had been given to him or to his companions. His contention that he did not commit the crime of which he was convicted is not a matter which should be considered by this Court in this proceeding, and is frivolous; but this Court should consider the question whether Bowler's confession was illegally admitted in evidence against him at his trial, since he contends that it was the fruit of an unlawful arrest.

■ 1. From the evidence this Court concludes (a) that when the police arrested Bowler they had probable cause to do so, i. e. a reasonable belief that two felonies (rape and larceny of the record player) had been committed and that Bowler had committed at least one of them, and (b) that there was no reasonable opportunity to obtain a warrant. The arrest was not unlawful. In reaching this conclusion, the Court has been guided by the constitutional principles which must be applied in the light of recent Supreme Court decisions, including Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Cleary v. Bolger, 371 U.S. 392, 401, 83 S.Ct. 385, 9 L.Ed.2d 390; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726. See also Edwards v. State, 196 Md. 233, 76 A.2d 132; Mulcahy v. State, 221 Md. 413, 158 A.2d 80; Price v. State, 227 Md. 28, 175 A.2d 11; People v. Michelson, 59 A.C. 465, 30 Cal.Rptr. 18, 380 P.2d 658.

Whether or not Bowler's confession was a fruit of his arrest,[1] the tree was not poisonous and the fruit is usable.

Since this Court has found that there was probable cause for the arrest of Bowler for the offense with which he was indicted, it is not necessary in this case to decide whether under the Fourteenth Amendment a lesser quantum of cause may be sufficient to justify stopping or arresting a person for a brief period of questioning.[2]

■ 2. At the trial Young was represented by counsel of his own choosing. The Criminal Court of Baltimore appointed a capable young lawyer with considerable trial experience to represent both Boston and Bowler. Neither of them objected to this arrangement, nor to the fact that they were being tried with Young. No complaint on either of those grounds was ever made until the present proceeding. At the end of his

1. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Hall v. Warden, 4 Cir., 313 F.2d 483, cert. den. Peppersack v. Hall, 374 U.S. 809, 83 S.Ct. 1693, 10 L.Ed.2d 1032; Driver v. State, 201 Md. 25, 92 A.2d 570; Payne v. State, 207 Md. 51, 113 A.2d 93.

2. See Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513; Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037; Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.

2d 134; Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; Edwards v. State, 196 Md. 233, 76 A.2d 132; Price v. State, 227 Md. 28, 175 A.2d 11; Symposium on Police Detention and Arrest Privileges, 51 Journal of Criminal Law, Criminology and Police Science, p. 385 et seq., especially Remington, p. 386 et seq., and Wilson, p. 395 et seq.

testimony in this Court, Bowler was asked why he contended that his representation by counsel was not sufficient. He replied that his trial counsel had devoted more time to Boston than to him when counsel visited them in jail before the trial. The very capable counsel whom this Court appointed to represent Bowler in connection with the pending petition stated that he had interviewed Bowler's trial counsel, his counsel in Bowler's PCPA proceeding, and the Assistant State's Attorney who prosecuted the case, and that he could not conscientiously contend that Bowler's trial counsel was incompetent.

On cross examination by the Deputy Attorney General Bowler said that no one had told him of his right to appeal. It appears from the evidence, however, that Bowler knew of his right to appeal, but not the procedure to exercise the right, and that he made no effort to exercise his right of appeal nor to inquire how it might be exercised.

After considering all of the evidence and all of the points raised by Bowler, this Court concludes that none of his constitutional rights was infringed. The writ of habeas corpus, therefore, is hereby denied.