James **BOWLER**, Appellant,

v.

**WARDEN, MARYLAND PENITENTIARY,** Appellee.

No. 9139.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 22, 1964.

Decided June 10, 1964.

Norwood B. Orrick, Baltimore, Md. (Court-assigned counsel), for appellant.

Robert C. Murphy, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen., of Maryland, on brief), for appellee.

Before SOBELOFF, Chief Judge, J. SPENCER BELL, Circuit Judge, and MICHIE, District Judge.

J. SPENCER BELL, Circuit Judge.

The petitioner, James Bowler, appeals from an order of the district court discharging his pro se petition for a writ of habeas corpus after a plenary hearing. Bowler's pro se petition raised at least two issues. It alleged that the trial court erred in admitting a statement made by Bowler to the police because the petitioner was unlawfully under arrest at the time the statement was made. This issue was exhaustively briefed and argued by assigned counsel both here and in the district court. Since we affirm the court's finding that the prisoner was lawfully arrested, we do not reach this issue. The pro se petition also alleged incompetence of his assigned state trial counsel.[1] The following facts alleged by the petition or disclosed by the record tend at least on their face to support the charge:

(1) Trial counsel stipulated that the statement which habeas counsel now contests as improperly admitted was freely and voluntarily signed by the petitioner. The petitioner, a Negro, alleges that he was coerced into signing the statement by police threats that he had better confess to burglary and larceny to avoid a charge of raping a white woman. He further alleges that the statement was inaccurately transcribed by the police who refused to incorporate anything therein which reflected on the morals of the white prosecutrix. Habeas counsel briefed and argued here these points as they affected the admissibility of the statement but not with respect to the charge of incompetence of counsel. When petitioner was allowed to make a statement at the habeas hearing with respect to the charge of incompetence of counsel neither his attorney nor the court made any effort to elicit testimony on this issue.

(2) Petitioner also alleges that he was tried jointly with one George Terry Young, a Negro, who was charged by the white prosecutrix with the capital offense of rape. The trial record shows that no motion to sever was made. It was apparent that the petitioner would be seriously prejudiced by the joint trial and would have been entitled to a severance under the state law if such prejudice were shown. Cf. Day v. State, 196 Md. 384, 76 A.2d 729 (1950). The record contains no explanation for the failure to make the motion.

Bowler was jointly indicted with Earl Boston and Young in the Criminal Court of Baltimore City on five counts charging them, *inter alia*, with breaking and entering on November 29, 1960, in the daytime, with felonious intent, the dwelling of Mrs. Freddie Jean Johnson (a misdemeanor—Ann.Code of Md., Art. 27, § 32 (1957)), and with the felonious larceny of certain goods, including a combination stereo hi-fi record player belong-

1. Not the same counsel as that which represents him in this habeas corpus proceeding.

ing to Mrs. Johnson (a felony—Ann.Code of Md., Art. 27, § 340 (1957)). Young was separately indicted for rape and assault upon Mrs. Johnson during the course of the burglary and larceny.

■ Young's counsel was privately employed. Counsel was appointed by the court to represent Bowler and Boston. No severance was requested, and the cases were tried together before the court without a jury. Bowler and Boston were found guilty on all counts of the indictment except the receiving count, and each was sentenced to ten years imprisonment. Young was found guilty of burglary and rape, and a death sentence was imposed.[2]

No appeal was taken by Bowler, but Young's conviction was affirmed. Young v. State, 228 Md. 173, 179 A.2d 340 (1962).

Bowler filed an application under the Maryland Uniform Post Conviction Procedure Act, Ann.Code of Md., Art. 27. §§ 645A–645J (1959), raising nine points. His application was denied by the Criminal Court of Baltimore, and leave to appeal was denied by the Court of Appeals of Maryland. Bowler v. Warden, 228 Md. 662, 180 A.2d 878 (1962).

On November 30, 1960, Mrs. Johnson reported to the police that on November 29th at about 3:30 in the afternoon her apartment at 2420 North Charles Street in Baltimore had been entered, that she had been raped, and that a Motorola record player of a specified style and color, a clock radio, and a suitcase had been taken. She said that only one man had entered her bedroom, but that she heard noises in the background which indicated that one or more other men were in the apartment. At the trial she testified that she never saw any of the persons in her apartment because her face was covered with a garment and that only one of the men raped her, and that she did not know what the others were doing. She later identified Young in the police line-up by his voice.

On December 1, the police were advised that a record player exactly answering the description of the one reported stolen from Mrs. Johnson had been pawned on Pennsylvania Avenue, in Baltimore, by one George Terry Young. The police arrested Young at 3:00 a. m. on December 2, and at about 10:30 a. m. Young told the police that while he was walking on Pennsylvania Avenue a stocky, wooly-haired, brown-skinned man, wearing a red sweater, known to Young as "Walt," asked Young for some "identification" so that he could pawn a record player which he and "Earl" had stolen, and Young loaned Walt his "union book" to serve as such identification. Young said he did not know Walt's full name or address, but that Earl, who lived at 1512 Eutaw Place, knew Walt. A uniformed sergeant of police and two detectives promptly went to 1512 Eutaw Place, where they were told that within the past few days Earl Boston had moved from 1512 to 1502 Eutaw Place. The three policemen went immediately to 1502 Eutaw Place and knocked on the door of Boston's one room apartment; when asked who they were, they replied "the police," and were admitted to the room, in which they found five Negro men. The police said they were investigating a burglary. Boston identified himself, and, in reply to an inquiry by the police, said that he knew no one named Walt. The police noticed, however, that a man whom they did not then know by name but who turned out to be Bowler fitted the description of Walt, and had a red jacket. The police arrested both Boston and Bowler, who without protest allowed themselves to be driven to the Central Police Station, where they were booked for "investiga-

---

2. The petitioner also alleged that state court assigned trial counsel spent only ten minutes with petitioner in jail before the trial; that during this brief interview and at the trial, counsel gave most of his attention to a co-defendant, to the neglect of petitioner's interest. Habeas counsel, however, would not support this contention and the district court rejected it. We accept the findings of the district court in this respect.

tion: assault." The time of arrest was given as 12:00 noon.

At the police station Bowler gave a statement in question and answer form, the substance of which was as follows: Bowler, Young and Boston had been drinking in Boston's apartment on the morning of November 29th. When they ran out of money, Young said he knew where he could get some. Bowler assumed that Young was going to borrow from a friend. Between 12:00 noon and 2:00 p. m. Young took them to an apartment building, which was unfamiliar to Bowler. After waiting outside the building for five minutes at Young's request he returned and took them into a second floor apartment where Bowler observed the prosecutrix asleep on a bed. The statement then reads: "I grabbed the Hi-Fi and I don't know if Earl (Boston) got anything or not." Boston and Bowler left the apartment. A few minutes later Young joined them as they were waiting for a cab, informing them that he had had intercourse with the prosecutrix. They pawned the hi-fi set for $30.00 in Young's name because he had a Union identification card, and divided the money. In response to further questions Bowler said he saw that the woman was white; that she did not wake up while Young sat on the foot of her bed and told Bowler and Boston which articles to take and which to leave; and that upon leaving he told Young "not to bother the lady." In response to specific questions, Bowler concedes twice that he has not been threatened or promised anything and that he understood the statement could be used for or against him and that it was a true and voluntary statement.

■ Counsel for Bowler very ably argues that Bowler's arrest was without probable cause and therefore illegal; that this circumstance should have been taken into consideration by the trial court in passing on the question of the admissibility of his statement, and that Bowler did not waive his constitutional rights by reason of his counsel's stipulation with respect to the statement's ad-

missibility. But the difficulty with this argument is that the findings of fact by the district court support its conclusion that the arrest was lawful. The statements of the prosecutrix were a reliable source from which the police were justified in believing that a felony had taken place. The police had probable cause to suspect Young because his name was connected with the pawned loot. The police had a continuing duty to run down any leads obtained from Young whether they believed them or not. The petitioner was in the company of Boston, who was named by Young. His physical appearance sufficiently fitted Young's description to enable the police to pick him out of five people in the room. Whether we would have reached a different result, we think this sufficient evidence to support the district court's conclusion that the arrest was legal under Maryland law.

■ The petition alleges incompetence of counsel. When the petitioner was placed on the stand in the habeas corpus hearing and permitted to make a statement, his fumbling attempt to justify his charge of the grounds that (1) counsel talked to him only ten minutes in the jail before the trial, and (2) that most of counsel's attention was devoted to a co-defendant, did not touch the more cogent reasons advanced by the pro se petition and supported by its factual allegations or by the record of the state trial itself.

The petition alleges that an illegally obtained statement which was both inaccurate and coerced was admitted into evidence. The record shows petitioner's counsel stipulated that it was freely and voluntarily given. Habeas counsel here suggests that this meant only that no physical force or third degree methods were used. In the habeas hearing the court permitted the state's counsel to elicit from the petitioner on cross-examination that he was silent at the trial and did not protest his counsel's stipulation. The idea that a man with an eighth grade education could waive his constitutional right by his failure to protest his own counsel's ignorance or indifference to

a defense of psychological force, as distinguished from physical brutality, is hardly supported by the cases. A layman may not be so easily denied his constitutional rights. Cf. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). We think this aspect needs to be further explored.

Petitioner also alleged that he was jointly tried with Young, who was charged with a capital offense. At the habeas hearing Bowler testified that Young's statement incorrectly accused him of assisting in breaking the lock on the prosecutrix's door, but the prosecutrix testified the door was not locked. Even if we reject Bowler's statement, though not contradicted in the habeas hearing, the state court record shows that no motion was made by trial counsel for severance. The Maryland Court of Appeals strongly implied in Young's appeal that it would have been error to have denied a motion by his counsel to sever. Cf. McElroy v. United States, 164 U.S. 76, 17 S.Ct. 31, 41 L.Ed. 355 (1896); Day v. State, 196 Md. 384, 76 A.2d 729 (1950). It would appear that a serious question of abuse of discretion would have been raised by a refusal to sever. It is conceivable that Bowler's counsel had reasons which to him seemed sufficient for not moving to sever, but no effort was made to explain this apparent failure of his trial counsel. Whether the State can place the burden of making out a case on petitioners to this extent in habeas hearings is one question; in any event in the absence of further inquiry or explanation we think the record fails to establish the court's conclusion that "*none* of the petitioner's constitutional rights were denied him."

The issue of incompetence of counsel raised by the petition and supported either by factual allegations therein or by the record in the trial court is non-frivolous. If, upon a fair inquiry, the facts alleged by the petitioner are found to be true and if no satisfactory explanation can be adduced to explain the apparent errors of trial counsel which are raised by the record, then petitioner is entitled to be discharged. The case is remanded for further consideration of these matters.

Remanded.