James **BOWLER**

v.

**WARDEN, MARYLAND PENITENTIARY.**

**Civ. A. No. 13891.**

United States District Court
D. Maryland.

Dec. 17, 1964.

Leon H. A. Pierson, court-appointed, Baltimore, Md., for petitioner.

Thomas B. Finan, Atty. Gen. of Maryland, and Robert C. Murphy, Asst. Atty. Gen. of Maryland, Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

This habeas corpus case is before the Court on remand from the Fourth Circuit. Bowler v. Warden, 334 F.2d 202 (1964). See also Bowler v. Warden, D. Md., 219 F.Supp. 25 (1963). It is unnecessary to recite at this time the facts and proceedings which were reviewed in those two opinions. It is sufficient to note that petitioner (Bowler) was jointly indicted with Earl Boston and George Terry Young in the Criminal Court of Baltimore on five counts charging them, inter alia, with breaking and entering on

November 29, 1960, in the daytime, with felonious intent, the dwelling of Mrs. Freddie Jean Johnson, and with the felonious larceny of certain goods, including a combination stereo hi-fi record player belonging ·to Mrs. Johnson. Young was separately indicted for rape and assault upon Mrs. Johnson during the course of the burglary and larceny.

The cases were tried together before the Court without a jury. Bowler and Boston were found guilty of all counts of the indictment except the receiving count, and each was sentenced to ten years' imprisonment. Young was found guilty of burglary and rape, and a death sentence was imposed.

No appeal was taken by Bowler, but Young's conviction was affirmed. Young v. State, 228 Md. 173, 179 A.2d 340 (1962).

The principal point urged by Bowler and his able court-appointed counsel at the previous hearings in this Court on the pending petition was that Bowler had been illegally arrested, and that a statement which he had given to the police shortly after his arrest should therefore not have been admitted in evidence against him at his trial. The legality of the arrest was sustained by this Court, 219 F.Supp. at 27, and on appeal, 334 F. 2d 205. The voluntariness of the statement is, however, still open to attack on other grounds.

On remand, this Court appointed new counsel for Bowler, who is pressing the following points:

"1. Bowler was arrested without probable cause in violation of the Fourteenth Amendment.

"2. Bowler's statement was the fruit of his illegal arrest, and, therefore, its admission into evidence was unconstitutional.

"3. The circumstances of the arrest should have been taken into account to determine whether the statement was voluntary."

The parties have agreed that the Court may consider as presently before the Court all of the evidence offered at the 1963 hearings in this Court on the pending petition, including the transcript of the trial in the Criminal Court. Bowler, Boston and Lt. Rochford gave additional testimony, trial counsel for Bowler in the Criminal Court testified, and Bowler's school record was presented by a representative of the Board of Education of Baltimore City.

■ (1) Bowler testified that immediately after he was taken to the police station and before he gave a statement to the police, he requested permission to telephone his mother, intending to ask her to try to have some of his friends obtain a lawyer for him, but that such permission was denied, and that he discussed with Boston the possibility of obtaining a lawyer. Bowler further testified that a statement was obtained from him by the police as a result of implied threats that he would be prosecuted for the rape of a white woman, with a possible death sentence, if he did not say what the police wanted him to say regarding the entry, the theft and Young's activities. Much of Bowler's testimony was contradicted by the testimony of Boston and of Lt. Rochford. Bowler is not a credible witness.

This Court finds as a fact that Bowler did not seek to obtain the services of counsel until he was arraigned. The Court further finds that Bowler's statement to the police was not obtained as a result of any threats, implied or otherwise, but that it was voluntarily given under the following circumstances. When Bowler was first brought to the police station he was told that the police were investigating a report by Mrs. Johnson of a burglary and larceny by three unknown men and rape by one of them, and that he was one of the men suspected. Bowler denied any knowledge of the burglary, larceny or rape at the time of his first interview. Shortly thereafter, however, Boston voluntarily confessed his part in the larceny, denied breaking into the apartment, and indicated that Young had had intercourse

with Mrs. Johnson. Bowler was then confronted with Boston, who told Bowler that he (Boston) had told the truth and that Bowler had better do the same. Bowler thereupon gave a statement to the police, after having been advised that anything he said must be free and voluntary and that it might be used against him in court. Bowler's statement was essentially similar to Boston's, stating that there had been no breaking into the apartment by either Bowler or Boston, admitting that they had been in the apartment and had taken the personal property referred to, and stating that they had urged Young not to bother the lady, but that Young had remained behind and shortly thereafter told them that he had had intercourse with Mrs. Johnson.

Trial counsel was appointed for Bowler and Boston after they were indicted on December 22, 1960, and arraigned on December 29, 1960, and he visited them in jail. The Court finds as a fact from the evidence, believing the testimony of Boston in preference to that of Bowler and the testimony of trial counsel in preference to that of either or both of them, that Bowler and Boston first told him what had happened in terms substantially in accordance with the statements they had given to the police, which trial counsel had obtained from the State's Attorney. The Court further finds that trial counsel then read their respective statements to Bowler and Boston and that both of them told him that the statements were true and had been voluntarily given. It does not appear that he inquired into the circumstances of Bowler's arrest.

On the basis of the foregoing facts and the previous rulings with respect to the arrest, this Court finds and concludes that Bowler's statement was voluntarily given and was properly admitted in evidence against him.

 (2), (3). The question of adequate representation by trial counsel presents a more difficult problem. Trial counsel had been admitted to the Bar in October 1960, less than three months before he was appointed to represent Bowler and Boston. He had served as a bailiff for Judge Oppenheimer for three years while he attended the University of Maryland Law School. Immediately after he was admitted to the Bar and before the trial of this case in February 1961, he had been appointed to represent about a dozen defendants charged with various offenses and had represented them at their trials in the Criminal Court. He was then and is now associated with one of the best trial firms in Baltimore, which includes a man of wide experience in prosecuting and defending criminal cases, with whom he sometimes discussed the cases he had been appointed to defend, although he does not remember any such discussion in this case.

Before he visited his clients in jail, trial counsel learned that the statement Young had given to the police said that the three of them had broken into the apartment. Nevertheless counsel did not discuss with his clients the possibility of a severance. He felt that a severance would not be desirable because he feared that Young's case would be tried first and that Young would then testify against his clients. He recommended that both of his clients request a trial by the Court without a jury, believing (a) that if none of the defendants took the stand the statement of each would be admitted only against the individual defendant, (b) that a judge would not be influenced against Bowler and Boston by Young's statement, and (c) that the lesser participation in the offenses by Bowler and Boston would tend to reduce any sentence which might be imposed on them.

Bowler and Boston agreed to follow this advice, and trial counsel saw them again in the lock-up immediately before the trial, at which time they reiterated that their statements were true and voluntary. When the case came on for trial before Judge Carter without a jury, the State did not offer any evidence sufficient to prove burglary against Bowler or Boston, although it did offer evidence suffi-

cient to prove larceny against all three and rape against Young. The only evidence implicating Bowler which was admissible against him was his own statement. Trial counsel for Bowler and Boston did not cross-examine the officers with respect to the voluntariness of the statements of Bowler and Boston, but stated to the Court: "If your Honor please, we make no contentions at the time the statements were not voluntarily given (sic), we do, in very minor particulars, contest the accuracy, but the voluntariness is not challenged."

At the conclusion of the State's case, trial counsel for Bowler and Boston asked each of them if they desired to take the witness stand. Boston said: "No. Nothing else I could add to the statement". Bowler said: "I don't have anything else." Counsel then said: "The two defendants have indicated they have nothing to add to the statements, if your Honor please, and for that reason did not desire to take the witness stand. That is their case, if your Honor please." The record then shows that a "statement" was made by counsel for Young and that a "statement" was made by counsel for Bowler and Boston. The contents of these "statements" were not recorded, and trial counsel does not now remember what arguments he made. Particularly, he does not remember whether he argued that there was no evidence legally sufficient to prove his clients' guilt of burglary. He did renew his "motion" for a general directed verdict. The Court denied that motion and then said:

"(The Court) The evidence in this case as to guilt is overwhelming. Anyone charged with crime comes into this court bearing a cloak of innocence and he maintains that until he is found guilty beyond a reasonable doubt and to a moral certainty. That, as we know, has been and as I have said so many times, doesn't mean that it has to be a mathematical or absolute certainty.

"There can be no doubt whatsoever that each of these defendants is guilty far beyond any reasonable doubt. The verdict in Indictment No. 4831 as to Boston, Bowler and Young, that is the burglary indictment, is guilty as to each. The verdict in No. 4832, Mr. Young, that is the rape charge, is guilty. Are you ready for sentence?"

It appears from the transcript that the Court entered a general verdict of guilty on all counts against all three defendants in the burglary case, thereby finding them guilty of breaking with intent to commit a felony, of breaking with intent to commit a misdemeanor, of being a rogue and vagabond, of larceny of the various items of personal property, as well as finding Young guilty of rape in the related case.

The record shows that after the Judge asked "Are you ready for sentence?" trial counsel consulted with Bowler and Boston and stated: "The defendants informed me they are as ready as they will ever be, your Honor." Thereupon the following occurred:

"(The Court) I see. That statute is up to ten years, is it not?

"(Mr. White) Yes sir.

"(The Court) Well, apparently the only way to protect law abiding citizens and people like Boston and Bowler is to keep them locked up. That is what I propose to do, for a long time. The sentence as to Boston is ten years in the Penitentiary. The sentence as to Bowler is also ten years in the Penitentiary. Now, as to Young, are you ready for sentence?"

It does not appear that trial counsel for Bowler and Boston made any argument in mitigation of punishment, asked to make any argument in mitigation of punishment, or that any right of allocution was offered to either defendant.

The Court cannot say that the reasons which moved trial counsel not to seek a

severance for Bowler and Boston from the charges against Young were so unreasonable as to amount to a lack of due process. Once that decision was made, however, it was incumbent upon counsel to obtain for his clients the benefits of the decision by appropriate objections to the evidence, by argument on the question of guilt, and particularly by argument on the question of sentence, in order to show the relatively minor part which his clients had played.

It is unlikely that an experienced trial lawyer would have allowed his clients to plead not guilty and then have made no effort to keep out the statements, the sole evidence which implicated his clients, especially where there was a serious question as to the legality of the arrest of Bowler and consequently of the admissibility of his statement. No doubt inexperienced trial counsel, after his service as bailiff, assumed that a judge would recognize the points without elaborate argument, but experienced attorneys realize that it is never wise to assume that any judge, state or federal, will remember and apply all of the points in favor of his client without having them called to his attention. It is possible that these arguments were brought to the attention of the Court in the unreported "statement" by trial counsel before his clients were found guilty or that they were brought to the attention of the Court off the record, but trial counsel cannot remember that this was done and this Court must take the record as it is.

The controlling law is set out in Snead v. Smyth, 4 Cir., 273 F.2d 838 (1959); Turner v. State, 4 Cir., 303 F.2d 507 (1962); Turner v. State, 4 Cir., 318 F.2d 852 (1963), and later Fourth Circuit cases which have applied the rules stated therein.

This Court does not find that trial counsel was incompetent. He was then and is now a thoroughly competent lawyer, although at that time he was quite inexperienced. The duty of assigned counsel, as of other counsel, is to protect the interests of his client as well as he can in an ethical manner. The responsibility of conducting a proper factual and legal investigation is highly important to any individual charged with the commission of a crime. It is not the duty of an attorney to obtain an acquittal at any cost; the ethical standards of the legal profession require that an attorney not only avoid subornation of perjury, but that he not suggest to his client testimony which he believes to be contrary to the truth. In the instant case trial counsel should have inquired into the circumstances of the arrest and should have given more consideration to the admissibility of the statements and to the question whether he should have conceded their admissibility than the record shows he gave. He should certainly have made an argument in mitigation of punishment. It is probable that nothing counsel could have done in any of these respects would have changed the verdict or the sentence, which was no greater than the sentence which might have been imposed for larceny alone. Both Bowler and Boston had bad criminal records, including prior convictions for burglary.

This Court does not hold that any or all of the specified failures of counsel standing alone would amount to such inadequate representation as would require a setting aside of the verdict. But they were coupled with (1) a general verdict of guilty, which meant that the Judge found Bowler guilty of burglary, a crime of which there was no evidence legally sufficient to convict him, and (2) a sentence apparently based upon such guilt, as well as upon the relatively minor larceny. The sum of these factors constrains this Court to find that Bowler was denied due process.

It follows that the Court should enter an order directing that Bowler be released unless the State retries him within a reasonable time. He is well aware that on such a retrial he may receive a longer sentence or the same sentence without credit for the time served. Counsel will prepare an appropriate order.

The United States Attorney may also consider whether Bowler should be prosecuted for his apparent perjury in this Court.[1]

---

1. Although the records show that Bowler ran away from home and left the Baltimore City schools when he was in the sixth grade, he was already reading at the ninth grade level, and is obviously quite able to understand the points which may be raised in his cases and to adapt his testimony from time to time to the points he wishes to establish.