John Frank **LEDBETTER**, Jr.

v.

**WARDEN, MARYLAND PENITENTIARY.**

Civ. No. 14551.

United States District Court
D. Maryland.

March 18, 1965.

**370**

Robert M. Carrico, Jr., court-appointed, Baltimore, Md., for petitioner.

Thomas B. Finan, Atty. Gen. of Maryland, and R. Randolph Victor, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

Petitioner (Ledbetter) was convicted of first degree murder by a jury in the Criminal Court of Baltimore on February 24, 1960, and was sentenced to life imprisonment. The death resulted from the brutal slugging and robbing of an old man by four 19-year-old youths. Ledbetter was represented at his trial, which was held after the trials of the other three youths, by an experienced criminal lawyer, engaged by his family. The same attorney and his associate represented him on the original appeal, which resulted in an affirmance of the conviction. Ledbetter v. State, 224 Md. 271, 167 A.2d 596 (1960).[1]

In an application for relief under the Post Conviction Procedure Act (PCPA), filed in 1963, Ledbetter raised six points. At the hearing on that application, the attorney who had been appointed to represent him in the PCPA proceeding advised the Court that Ledbetter was making ten additional complaints, but that in the attorney's opinion none of the contentions had any merit. No testimony was taken, and the Court denied relief, concluding that the legality of the arrest, the legality of a search, and the voluntariness of the confession or admissions could not be raised in a post conviction proceeding. The Court of Appeals disagreed with that conclusion, but denied leave to appeal. Ledbetter v. Warden, 234 Md. 643, 200 A.2d 81 (1964).[2]

The present petition filed in this Court raises thirteen points, similar to those raised in the PCPA proceeding, to which Ledbetter's present court-appointed counsel has added one. With Ledbetter's approval, his counsel has withdrawn three of the fourteen points[3] and consolidated some of the others, so that the points now being pressed are: (A) faulty indictment; (B) inconsistent verdicts; (C) insufficient evidence; (D) false and perjured testimony; (E) illegal arrest; (F) involuntary confession; and (G) ineffective assistance of counsel. Asso-

---

1. The points argued were the sufficiency of the evidence to sustain the verdict, the claimed inconsistency between the verdict of not guilty of robbery and the verdict of guilty of murder.

2. Based upon the record at the trial and the PCPA petition, the Court of Appeals said: "The applicant concedes that nothing was taken from his house as a result of the alleged illegal search. Cf. Young v. Warden, 233 Md. 596, 599, 195 A.2d 713, and Slater v. Warden, 233 Md. 609, 611, 195 A.2d 675. The only tangible property offered in evidence was a ring belonging to the decedent recovered from one of the other boys. According to Ledbetter it was never in his possession. There is nothing to show affirmatively that the arrest of the applicant was illegal. One of the other boys, called Jerry, was identified and told still another boy (who testified at Ledbetter's trial) about the yoking."

3. (1) That there was an illegal search of his home; (2) that he was denied access to a complete transcript of the trial proceedings; and (3) that he was denied the right to take the witness stand by his attorney. Nothing was taken from the house. The other two points were raised by Ledbetter at the suggestion of fellow inmates of the penitentiary, in utter disregard of the facts.

ciated with some of these points, particularly the last two, is (H) the question whether Ledbetter waived his constitutional rights.

Testimony has been taken over a period of two days, and the points have been fully briefed and argued. The case illustrates the difficulty of determining the true facts relating to events which occurred more than five years ago. It is almost impossible for police to remember individual cases after four or five years; they must rely on their records, and where, as here, some of the records are inaccurate and some defy clear interpretation, the position of the Court and of conscientious counsel is difficult indeed. In the case at bar, as in many other cases, the difficulty is compounded by the willingness of the petitioner to swear to any facts which his fellow prisoners or his own study of recent decisions lead him to believe will be helpful. So, repeatedly, counsel and the Court must turn over a bushel of chaff in an effort to determine whether any grains of wheat are included therein. This time, one grain has been discovered.

The facts will be stated as briefly as will permit the development of the points which must be decided. The four youths had been drinking together; it is a reasonable inference from all the evidence that they wanted money and decided to rob someone on the street. An old man, walking alone, approached them. According to Ledbetter's confession, Jerry Dennis, one of the four, said: "I'm gonna get this here one." Dennis tied a handkerchief around his knuckles and slugged the old man on the jaw, causing him to fall and strike his head, which resulted in his death. Ledbetter tried to pull the man out of the street where he had fallen, while the other two robbed him of money and a ring. They left the victim where he lay, and when the police found him, it was thought at first he had had a stroke. After the victim's wife told them that money and a ring had been taken, and an autopsy showed the injuries, the police began to search for the robbers. After questioning a number of suspects, the police arrested Jerry Dennis on the morning of August 11. He confessed and implicated three others, including Ledbetter and Taylor, who were arrested at the restaurant where they worked between 3:00 and 5:00 p. m. the same day. The records are not clear whether Ledbetter was charged with murder and robbery as soon as he was brought to the Western Police Station or later, after he had been questioned, but Sergeant Kendrick, who issued the arrest order, testified that he regarded Ledbetter as a principal and that Ledbetter was brought in to be charged. Sergeant Kendrick was taking a written statement from Dennis when Ledbetter arrived at the station, so Ledbetter was kept for a while in a small room, with Officer Moser standing guard at the door. Officer Moser led the conversation around to the robbery, and Ledbetter made some damaging admissions, which Officer Moser noted on a pad and related at the trial. Neither before nor during that conversation did Officer Moser or anyone else advise Ledbetter of his right to remain silent, of his right to an attorney, or that any statement he made might be used against him. No threats or promises were made, and Ledbetter did not ask to consult an attorney. However, on conflicting evidence the Court finds that he did ask permission to telephone his family, his aunt and uncle with whom he lived and who later obtained a competent attorney for him. Such a request was made and denied before Ledbetter made the damaging admissions.

Later, about 8:30 p. m., Ledbetter was interviewed by Sergeant Kendrick, who was assisted by five other officers, Sergeant Donohue, Officers Moser and Clark, and Detectives Rawlings and Keefer. The statement just given by Dennis was read to Ledbetter and he agreed with it in general. Ledbetter gave his own signed statement in which he said that he did not know a robbery was planned until he heard Jerry say "I'm gonna get this here one". However, the tenor of the statement and the other facts indicate that he must have known that a robbery was

contemplated. No threats or promises were made to Ledbetter, and no force was used, but it was admitted by the police that he was not told that he had a right to remain silent, that he had a right to an attorney, or that any statement he made might be used against him; and, as found above, he had been refused permission to call his family. At the trial Sergeant John Donohue testified that, in the interrogation room before the written statement was given, Ledbetter had said, "we were going to rob him, yoke him". This admission was not included in the written statement, which was completed about 10:20 p. m.

Ledbetter has also testified that he complained of a headache and was told he could have medication only after he had given his statement. This was denied by police, and on the conflicting testimony, this Court does not find that such a complaint was made.

Taylor's statement was taken the next morning. When it was completed the three youths were taken to the Central Police Station, where the magistrates' "homicide court" was held daily at 3:00 p. m., before the creation of the Municipal Court of Baltimore City. The docket entries for the 3:00 p. m. session that day are so confusing that it is impossible to tell even who presided. None of the youths was represented by counsel at the hearing. The record shows that all three of them entered pleas of guilty of murder, not guilty of robbery. Ledbetter testified in this Court that he entered a plea of guilty to robbery but not guilty of murder. They were held without bail for action of the grand jury.

With the approval of the Judge presiding in Part One of the Criminal Court of Baltimore, the Assistant Attorney General has presented to this Court evidence which shows that the pleas taken at the magistrate's hearing were not brought to the attention of the grand jury. They were not referred to at Ledbetter's trial.

Ledbetter's counsel, obtained by his family, prepared the case for trial in the customary manner in which he prepared cases in 1959. The practice has changed since then. He had a copy of the signed statement, but had apparently not been told by his client about any oral statements. He was surprised when the testimony relating to an oral statement was first offered. He told the Court that he had no objection to the evidence, but he evidently thought that what was about to be offered was the signed statement, which he thought was "fairly favorable" and upon which, wisely or unwisely, he was apparently intending to base an argument. Ledbetter's counsel did not offer a motion for a directed verdict; but after the oral statements were admitted, there was undoubtedly enough evidence to go to the jury, and Ledbetter was not prejudiced by the failure. The jury found Ledbetter guilty of first degree murder, without capital punishment, and not guilty of robbery.

Based upon the foregoing findings of historical fact, this Court makes the following ultimate findings and conclusions:

■ (A) The entry of a guilty plea at the hearing before the magistrate did not render the indictment faulty, since the plea was not brought to the attention of the grand jury. De Toro v. Pepersack, 4 Cir., 332 F.2d 341 (1964). Nor was it brought to the attention of the petit jury.

■ (B) The fact that the jury found Ledbetter guilty of murder and not guilty of robbery does not require that the guilty verdict be stricken. This point was fully covered by Judge Hammond's opinion on direct appeal from the conviction. Ledbetter v. State, 224 Md. at 273, 167 A.2d 596, et seq.

■ (C) The Court of Appeals held that it could not review the sufficiency of the evidence because there had been no motion for a directed verdict. 224 Md. at 273, 167 A.2d 596. If the oral admissions were properly before the jury, however, there can be little or no doubt that the evidence was legally sufficient to convict Ledbetter of first degree murder.

■ (D) Although the evidence presented in this Court raises some doubt as

to whether the testimony with respect to the admissions offered by the State at the trial was entirely accurate, this Court does not find that any perjured testimony was knowingly offered by the State or given by any of the police witnesses.

 (E) The arrest was legal. The police had sufficient probable cause to arrest Ledbetter. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Ralph v. Pepersack, 4 Cir., 335 F.2d 128 (1964); Bowler v. Warden, Maryland Penitentiary, 4 Cir., 334 F.2d 202 (1964); Mulcahy v. State, 221 Md. 413, 158 A.2d 80 (1960).

 (F), (G), (H) Under the tests which must now be applied by the State Courts as well as by this Court, the signed statement given by Ledbetter to Officer Kendrick and the other officers who were questioning him, together with the oral admissions testified to at the trial by Officer Moser and Officer Donohue, must be considered to have been involuntary or coerced by the totality of the circumstances. Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). See also Miller v. Warden, 4 Cir., 338 F.2d 201 (1964); Theiss v. State, 235 Md. 541, 201 A.2d 490 (1964); Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). Cf. Davis v. State of North Carolina, 4 Cir., 339 F.2d 770 (1965); Mefford v. State, 235 Md. 497, 201 A.2d 824 (1964). The use in evidence of his written statement and the oral admissions deprived Ledbetter of a constitutional right guaranteed to him by the Fourteenth Amendment, unless he knowingly waived his rights.

 This Court cannot accept on this point the rulings of the State Courts in the PCPA proceeding, in view of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), but must make its own findings of fact as well as conclusions of law. It is true that Ledbetter's trial counsel stated that he had no objection to the admission of any of the oral or written statements, but this was apparently said in the belief that only the signed statement was to be offered. In any event, the evidence indicates that counsel took that position without consulting Ledbetter. Ordinarily such consultation is not necessary where competent counsel is conducting a difficult trial. Here, however, there was no other evidence in the case connecting Ledbetter with the crime. There is no evidence that Ledbetter knew of the constitutional rights involved. And it appears from the evidence that trial counsel did not give as much attention to the preparation of this point as he would give today, in view of the recent Supreme Court decisions. Under all the circumstances the Court cannot say that Ledbetter's representation by his trial counsel fell below the standard established by Snead v. Smythe, 4 Cir., 273 F.2d 838 (1959), and later Fourth Circuit cases. On the other hand, this Court cannot say that there was any such waiver of constitutional rights as would meet the tests prescribed by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937); Walker v. Pepersack, 4 Cir., 316 F.2d 119 (1963); Jones v. Cunningham, 4 Cir., 313 F.2d 347 (1963); Bowler v. Warden, Maryland Penitentiary, 4 Cir., 334 F.2d 202 (1964). Cf. Henry v. State of Mississippi, 85 S.Ct. 564 (1965).

It follows that Ledbetter must be released unless the State elects to retry him and does so within a reasonable time. Counsel should prepare an appropriate order.

The Court expresses its appreciation to Mr. Carrico for his conscientious and able presentation of his client's case.