PALACOROLLE *v.* STATE

[No. 353, September Term, 1964.]

*Decided July 6, 1965.*

The cause was argued before PRESCOTT, C. J., and HAM-MOND, MARBURY, SYBERT and OPPENHEIMER, JJ.

*Stanley Alpert* for appellant.

*Julius A. Romano, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The appellant, an eighteen year old defendant with a tenth grade education, was tried before Judge Harlan, sitting without a jury, in the Criminal Court of Baltimore, under indictments charging him with resisting arrest and disorderly conduct. Prior to a plea of guilty to both indictments, the Clerk read the indictments aloud to the appellant. Thereafter the appellant offered his pleas of guilty, whereupon Judge Harlan advised him of his right to the appointment of counsel at the expense of the State. The appellant refused. Judge Harlan advised him that a plea of guilty to resisting arrest authorizes the imposition of any fine or sentence not cruel and inhuman. The appellant responded that he understood his right to the appointment of counsel and that he understood that his plea of guilty to resisting arrest could result in such fine or sentence. The State then inquired whether any promises of leniency or other promises were made to the appellant, to which he replied in the negative.

The State told the court that on October 3, 1964, at approximately 11:00 p.m., Officer Harold Stein, detailed in plain

clothes to East Baltimore Street for the purpose of apprehending any possible window breakers or plunderers of automobiles, observed the appellant in a dazed condition walking past him into the doorway of a shop, try the door, walk away and try the door of an automobile at the curb, walk to a parking lot and attempt to get into an open car; whereupon Officer Stein approached the appellant and identified himself as a police officer, to which the appellant replied, "I fought police before." Officer Stein attempted to question him as to his actions; the appellant started yelling and using profane language; the officer placed him under arrest and, after making a call for the police wagon, the appellant said, "You're not going to take me in * * * I'm going to get away from you." The appellant made an unsuccessful attempt to break away. After the arrival of the police wagon, Officer Stein climbed in with the appellant and while enroute to the police station the appellant lunged at Officer Stein attempting to strike and kick him. He was subdued by Officer Stein and another officer.

The appellant took the stand and testified that he remembered opening the car door and a police officer coming up to him and grabbing him by the belt of his pants. The officer asked him "what I was doing. I turned around and then I come to my senses. I didn't know what I was doing. So the police officer said, 'You got any identification?' So I took my wallet out of my pocket. He grabbed my wallet out of my hand, looking at it. I had a newspaper clipping in my wallet about when I got in trouble with a police officer. I got sentenced to sixty days over the City jail. He said, 'you like to fight police, huh?' He started pulling me down to the call-box. I pulled back on him and he grabbed me and took me down to the call-box and called the wagon. The wagon came and they threw me inside. I didn't lunge at him or anything as the statement says but I did resist when he pulled me down to the call-box. I pulled away from him."

Upon questioning by the court, the appellant testified that he had been drinking heavily. He had a juvenile record, which included acts of violence. In 1963, when he was past the juvenile age, he had been sentenced to not more than eighteen months for auto larceny. The sentence was suspended, and he

was sent to the Maryland Training School, but, after an escape from that School, served some months in a penal institution. In 1964, he had had three convictions for disorderly conduct, and, at the time of the crimes here involved, was on probation. Despite his youth, he was no stranger to the processes of the criminal law.

The appellant was sentenced to two years on the charge of resisting arrest and sixty days on the disorderly conduct charge, the sentences to run concurrently.

The appellant contends that his age, limited formal education and his intoxicated condition at the time of the arrest together with his version of the facts demonstrate that he could not have had the requisite understanding of the nature of the charges against him to have intelligently entered his pleas of guilty, nor understood the consequences of proceeding without benefit of counsel. A youthful defendant of limited education may nonetheless demonstrate to the satisfaction of the court that he possesses the requisite understanding of the nature of acts sufficient to amount to a knowing and voluntary waiver of constitutional protections. *Bean v. State,* 234 Md. 432, 199 A. 2d 773 (1964) and cases therein cited. See also *Cooper v. State,* 231 Md. 248, 253, 189 A. 2d 620 (1963). The question of whether there has been a knowing and voluntary waiver is largely a question of fact to be determined as a preliminary matter by the trial judge. *Johnson v. Zerbst,* 304 U. S. 458 (1938). We are convinced, and the appellant does not contend otherwise, that he was given every opportunity to indicate whether or not he understood the indictment, his pleas, and the availability of court appointed counsel to represent him, before Judge Harlan accepted the pleas and permitted the case to proceed without appointing counsel.

However, the appellant's contention seems to be that Judge Harlan, after ascertaining the appellant's age, limited education, condition at the time of the arrest, together with his version of the facts, should have stricken the pleas, appointed counsel over the appellant's objection and set the case down for a hearing on the merits. This argument is based upon the reasoning that the appellant's version of the facts, if true, demonstrates an available defense to the merits of the indictment, or

at least a patent misunderstanding of the crimes for which he had been charged under the indictment. Under Maryland Rule 722, the court is permitted in the interest of justice to strike a guilty plea. Whether or not this power is to be exercised is largely one of discretion. *White v. State,* 227 Md. 615, 177 A. 2d 877 (1962).

In *Moore v. Michigan,* 355 U. S. 155 (1957), a seventeen year old Negro with a seventh grade education was sentenced to life for murder after expressly "waiving" the assistance of counsel and entering a plea of guilty. A majority of the Supreme Court were of the view that the waiver of counsel and the entry of the guilty plea were induced by the defendant's fear of mob violence while in the custody of the Sheriff, and therefore reversed the conviction. While relying upon fear of mob violence to nullify the defendant's express waiver of counsel and entry of a guilty plea, the Court said that the record demonstrated that the defendant may have had some reasonable defenses to the crime charged and therefore the assistance of counsel seemed essential. The Court did not hold there could not be a voluntary waiver of counsel. In this case, there is no evidence that the appellant's express waiver of counsel and entry of guilty pleas were involuntarily given; on the contrary, we find that Judge Harlan made every effort to apprize the appellant of the consequences of his guilty pleas and the appellant indicated that no promises had been made to him to induce his pleas.

In *Carnley v. Cochran,* 369 U. S. 506 (1962), the Supreme Court reversed the conviction of an illiterate who conducted his own defense without having been advised of his right to the assistance of counsel. That case is factually distinguishable from the one before us. The Court noted that if the record had shown an express waiver of counsel as in *Moore,* the burden would be upon the defendant "to show by a preponderance of the evidence that his acquiescence was not sufficiently understanding and intelligent to amount to an effective waiver." 369 U. S. at 516. Here, that burden has not been met.

When, as in this case, a defendant has not shown that his waiver of court-appointed counsel was not understandingly and intelligently made, the constitutional right does not require that counsel be forced upon an accused who wants none. *Post v.*

*Boles,* 332 F. 2d 738, 742 (4th Cir. 1964) ; *Linden v. Dickson,* 278 F. 2d 755, 763 (9th Cir. 1960). See *Moore v. Michigan, supra* at 161 and *Carter v. Illinois,* 329 U. S. 173, 174-75 (1946).

The appellant has not shown there was a defense to the crime charged; he admitted that he resisted the officer who arrested him. Even a showing that there may have been a defense raised to the crimes charged, if there had been no guilty plea, does not, of itself, make an express and understanding waiver of counsel and entry of a guilty plea ineffective.

*Judgments affirmed.*