DIMERY *v.* STATE OF MARYLAND

[No. 161, September Term, 1974.]

*Decided May 8, 1975.*

*Motion for rehearing filed June 5, 1975; denied June 24, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Fred Warren Bennett, Assigned Public Defender,* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. DIGGES and O'DONNELL, JJ., dissent and O'DONNELL, J., filed a dissenting opinion in which DIGGES, J., concurs at page 679 *infra.*

Petitioner, Thomas Henry Dimery, III (Dimery), was convicted by a Prince George's County jury of the crimes of rape, attempted murder, assault and battery, and arson. He was sentenced to life imprisonment for rape, to concurrent terms of 20 years each for arson and attempted murder, and to a concurrent term of one year for assault and battery. The Court of Special Appeals affirmed the convictions in an unreported per curiam opinion, No. 826, September Term, 1972, filed September 13, 1973. We granted Dimery's petition for the writ of certiorari confined "solely to the question whether the trial court could impose a sentence of life imprisonment on petitioner's conviction for rape where the trial court had failed to instruct the jury that it could limit the penalty by rendering a verdict without capital punishment . . . ." We shall decide the matter adversely to Dimery.

Maryland Code (1957) Art. 27, § 461 provides that "[e]very person convicted of a crime of rape . . . shall, at the discretion of the court, suffer death, or be sentenced to confinement in the penitentiary for the period of his natural life, or undergo a confinement in the penitentiary for not less than eighteen months nor more than twenty-one years . . . ." The only revision in this section from the time of its enactment by Chapter 138, § 4, of the Acts of 1809 to the present time was the addition by Chapter 284 of the Acts of 1935 of the language "or be sentenced to confinement in the penitentiary for the period of his natural life."

By Chapter 22 of the Acts of 1949 there was added to the Maryland statutes what is now Code (1957) Art. 27, § 463, providing in pertinent part:

"The jury which finds any person guilty of rape under § 461 of this subtitle . . . may add to their verdict the words 'without capital punishment,' in which event the sentence of the court shall not exceed twenty years in the penitentiary; and in no

such case in which the jury has returned a verdict including the words 'without capital punishment' shall the court in imposing sentence, sentence the convicted person to pay the death penalty or to be confined in the penitentiary for more than twenty years."

The trial in this case concluded on July 21, 1972, a few weeks after the decision of the Supreme Court of the United States in *Furman v. Georgia*, 408 U. S. 238, 92 S. Ct. 2726, 33 L.Ed.2d 346 (1972), held by us (after the trial in this case) in *Bartholomey v. State*, 267 Md. 175, 297 A. 2d 696 (1972), to have proscribed the death penalty as it then existed under Maryland statutes.

We held in *England and Edwards v. State*, 274 Md. 264, 334 A. 2d 98 (1975), that § 463 remained viable after *Furman*, that when read together with § 461 it reveals a legislative intent that the words "without capital punishment" are to prevent not only the death penalty, but also life imprisonment, and that whenever a jury qualifies its verdict by adding those words, the punishment is not to exceed 20 years imprisonment.

Dimery was on trial not only for rape, assault and battery, arson, and attempted murder, of which he was convicted, but also for grand larceny. At the outset of his instructions to the jury the trial judge advised the jurors that he would "give [them] in [his] own handwriting each of th[o]se counts and possible verdicts as to each and every one prior to [their] going in the jury room so that [they would] know specifically what the defendant [was] charged with as to each count and the possible verdicts that could apply to those counts." He also referred to a special issue relative to sanity and advised that there was a place for the foreman to check "Yes" or "No" on that issue after the jury had made its determination. The jury was fully instructed. Counsel were asked if they had any exceptions or requests for additional instructions. There was an exception, not here relevant, and a request for an additional instruction, which was granted. No inquiry was made of the court as to the proposed form of

verdict nor was any exception taken on that subject. Counsel then proceeded to argue the case before the jury. After argument the court instructed the jury relative to the form of its verdict, stating in pertinent part:

"Criminal Trials 11,565, Count 1 is the crime of rape; possible verdict is either guilty or not guilty."

This was in accordance with the memorandum in the trial judge's "own handwriting [as to] each of these counts and possible verdicts as to each and every one," to which reference has previously been made. No exception was taken. Likewise, there was no request for an additional instruction.

Under Maryland Rule 756 g, "the particular omission [in the instructions] . . . [not having been] distinctly objected to before the jury retired to consider its verdict and . . . the grounds of objection [not having been] stated at that time," we take cognizance of the matter only if we conclude that this constituted "plain error in the instructions, material to the rights of the accused . . . ." As may be expected, Dimery says this is plain error and the State says it is not.

Dimery relies upon *Rowe v. State,* 234 Md. 295, 199 A. 2d 785 (1964); *Calton v. People of the Territory of Utah,* 130 U. S. 83, 9 S. Ct. 435, 32 L. Ed. 870 (1889); *Webb v. State,* 154 Ark. 67, 242 S. W. 380 (1922); *Vickers v. United States,* 1 Okla. Crim. 452, 98 P. 467 (1908); *Commonwealth v. Madaffer,* 291 Pa. 270, 139 A. 875 (1927); and *State v. Chaney,* 117 W. Va. 605, 186 S. E. 607 (1936). We regard each of those cases as legally and factually inapposite.

In *Rowe* the defendant was on trial for murder. As Judge Horney put it for the Court:

"The primary questions posed by this appeal arise out of the acceptance by the trial court of the jury verdict of 'not guilty of murder in the first degree but guilty of murder in the second degree' on the issue of guilt or innocence *despite the fact that the jury had found* on the issues of sanity and insanity that *the defendant was insane at the time*

*of trial* ('insane *now*') in addition to also finding that he was sane at the time of the offense ('sane *then*')." (First and second emphasis added.) *Id.* at 297.

At page 300 of 234 Md. the Court's opinion pointed out that among the exceptions interposed to the trial court's instructions was one on the precise ground precipitating the reversal by this Court, that "the court failed to inform the jury that it should not return a verdict on the indictment if it should find the defendant sane *then* and insane *now* on the issues." (Emphasis in this Court's opinion.) *Rowe* did not press this point on appeal. The Court said at page 301, "The reasons for these omissions are clear. On instructions from the defendant, court-appointed appellate counsel refrained from presenting any question which might bring about a reversal and a new trial. For reasons best known to himself, the defendant seems to fear the risk of another trial." The only issues presented on appeal were those which would have had the effect of releasing Rowe from custody or reducing the time of his incarceration had there been a reversal. Over the strong dissent of Chief Judge Brune and Judges Henderson and Hammond, the Court took cognizance of the sanity issue. As Judge Henderson put it for the dissenters, the point was open to the "serious objection . . . that it decides the case on a question not presented and on a proposition not advocated by either side." The reasoning behind the majority's taking cognizance of the point was, as Judge Horney put it for the Court:

"The failure of the trial court to advise the jury that it should not return a verdict on the indictment if it found the defendant insane at the time of trial, as well as the acceptance of the verdict when the court knew that the jury had determined that the defendant was insane at that time, raises a vital question as to whether certain aspects of the trial were valid." *Id.* at 302.

The peculiar circumstances under which the majority took

cognizance of the point raised in the trial court but not raised on appeal, the reverse of the situation now before us, was pointed out when the Court said at page 309 that "neither the counsel for the defendant, nor the Attorney General, nor those members of this Court who do not agree with the majority, pointed out a single case in which it has been held that a defendant who is insane should be tried for a criminal offense." The Court was faced with a finding of fact by the trier of fact, the jury in that instance, that the defendant was insane at the time of trial.

In *Calton* the defendant was convicted of murder in the first degree in the then Territory of Utah. As Mr. Justice Harlan put it for the Court, "the authority given [by the territorial statute] to substitute imprisonment at hard labor in the penitentiary for life for the penalty of death, when the accused is found guilty of murder in the first degree, depends upon a previous recommendation to that effect by the jury. *Without such recommendation the court, in the absence of sufficient grounds for a new trial, has no alternative but to sentence the accused to suffer death.*" (Emphasis added.) The trial court in that instance failed to instruct the jury relative to the statute. The reversal by the Supreme Court was placed upon statutory grounds, not the due process grounds here urged by Dimery. Mr. Justice Harlan said for the Court:

"If [the jury's] attention had been called to that statute, it may be that they would have made such a recommendation, and thereby enabled the court to reduce the punishment to imprisonment for life. We are of opinion that the court erred in not directing the attention of the jury to this matter. The statute evidently proceeds upon the ground that there may be cases of murder in the first degree, the punishment for which by imprisonment for life at hard labor will suffice to meet the ends of public justice. Its object could only have been met through a recommendation by the jury that the lesser punishment be inflicted; and it is not to be

presumed that they were aware of their right to make such recommendation. The failure of the court to instruct them upon this point prevented it from imposing the punishment of imprisonment for life, even if, in its judgment, the circumstances of the case rendered such a course proper." *Id.* at 32 L. Ed. 871-72.

The hands of the trial judge were not so tied in sentencing Dimery. With the verdict of guilty he was permitted to give a life sentence or a sentence ranging from 18 months to 21 years.

In the cases of *Webb, Vickers, Madaffer,* and *Chaney* the decisions were based on the fact that state law required the trial judge to instruct the jury that the jury could limit the defendant's punishment by a qualified verdict. Unlike the situation prevailing in Maryland prior to *Bartholomey,* the trial court in each of those cases had no discretion. It was required to sentence to death in the absence of the recommendation of a jury against that penalty.

In *People v. Gonzales,* 187 Cal. App. 2d 769, 10 Cal. Rptr. 12 (Dist. Ct. App., 3rd Dist. 1960); *Ferguson v. State,* 90 Fla. 105, 105 So. 840 (1925); *Penn v. State,* 62 Miss. 450 (1884); and *State v. Adams,* 68 S. C. 421, 47 S. E. 676 (1904), no request for an instruction was made on behalf of counsel for the accused and the courts refused to review omissions to instruct the jury as to the right to limit the sentence or to find the accused guilty of a lesser included offense.

In *Canter v. State,* 220 Md. 615, 617, 155 A. 2d 498 (1959), Judge Henderson pointed out for this Court that "[w]e have repeatedly held that even constitutional rights may be waived in the course of a trial," citing *Jordan v. State,* 219 Md. 36, 43, 148 A. 2d 292, *cert. denied,* 361 U. S. 849 (1959); *Reynolds v. State,* 219 Md. 319, 324, 149 A. 2d 774 (1959), *distinguishing Wolfe v. State,* 218 Md. 449, 146 A. 2d 856 (1958); *Jackson v. Warden,* 218 Md. 652, 655, 146 A. 2d 438 (1958), *cert. denied,* 359 U. S. 917 (1959); *Briley v. State,* 212 Md. 445, 448, 129 A. 2d 689 (1957); *Schanker v. State,* 208 Md. 15, 21, 116 A. 2d 363 (1955); and *Heath v. State,* 198 Md. 455,

464, 85 A. 2d 43 (1951). To this list could be added *Giles v. State,* 229 Md. 370, 387, 183 A. 2d 359 (1962), *appeal dismissed,* 372 U. S. 767 (1963), and *Lenoir v. State,* 197 Md. 495, 80 A. 2d 3 (1951). This is in accordance with the holding of the Supreme Court of the United States in *Michel v. Louisiana,* 350 U. S. 91, 76 S. Ct. 158, 100 L. Ed. 83 (1955), which was quoted by this Court in *Jordan v. State,* 221 Md. 134, 141, 156 A. 2d 453 (1959), *cert. denied,* 361 U. S. 972 (1960), and *Dillon v. White's Ferry, Inc.,* 268 Md. 118, 121, 299 A. 2d 785 (1973). *Michel* was relied upon in *Smith v. State,* 240 Md. 464, 472, 214 A. 2d 563 (1965). In *Michel,* 350 U. S. at 99, the Court quoted *Yakus v. United States,* 321 U. S. 414, 64 S. Ct. 660, 88 L. Ed. 834 (1944). In the latter case the Court said:

> "No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right . . . ." *Id.* at 444.

In *Smith v. State, supra,* Judge Oppenheimer listed for this Court some of the various constitutional rights that defendants had previously been deemed to have waived:

> "We have consistently held that a defendant in a criminal proceeding may waive even a constitutional provision which applies in his favor. Matters which we have held to have been waived include the questioning of prospective jurors on *voir dire, Lenoir v. State,* 197 Md. 495, 80 A. 2d 3 (1951); the constitutionality of the statute under which the defendant was tried, *Martin v. State,* 203 Md. 66, 98 A. 2d 8 (1953); specific findings by the jury of convictions of prior offenses in a narcotics case, *Beard v. State,* 216 Md. 302, 140 A. 2d 672 (1958); the right to a free transcript of the trial for use in appeal, *Jackson v. Warden,* 218 Md. 652, 146 A. 2d 438 (1958); the right to a separate trial, *Young v. State,* 228 Md. 173, 179 A. 2d 340 (1962); the

voluntariness of a confession, *Prescoe v. State,* 231
Md. 486, 191 A. 2d 226 (1963) and *Fisher v. State,*
233 Md. 48, 194 A. 2d 824 (1963); the right to a
speedy trial, *Keyes v. State,* 236 Md. 74, 202 A. 2d
582 (1964); and the right to court-appointed counsel,
*Palacorolle v. State,* 239 Md. 416, 211 A. 2d 828
(1965). In *Williams v. Warden,* 240 Md. 205, 213 A.
2d 579 (1965), we held that the systematic exclusion
of Negroes from the array of jurors could be
waived.

> "It is conceded by Smith's counsel that his waiver
> of the defectiveness of the indictment was made
> freely and knowingly. Having waived the issue
> before trial, he cannot withdraw the waiver after
> his conviction." *Id.* 240 Md. at 480.

Accordingly, if Dimery had a constitutional right to have the
jury instructed as to their statutory right to return a
qualified verdict, he could waive or forfeit that right by
failing to make a timely objection to the trial judge's
instructions, just as he could waive the right by electing a
court trial.

Closely akin to the case at bar is that of *Jones v. State,* 182
Md. 653, 35 A. 2d 916 (1944). Jones was convicted of first
degree murder and appealed to this Court. Although there
was no discussion of "plain error," Judge Collins said for the
Court:

> "The sixth exception is to the instruction given to
> the jury by the trial court after the State's
> Attorney and the attorney for the traverser had
> argued the case. The court instructed the jury as to
> the five possible verdicts under the indictment, any
> one of which they could render. Advice was also
> given as to the penalty for murder in the first
> degree. From the record, no objection nor exception
> was taken by the appellant to this instruction. The
> appellant particularly objects for the reason that,
> although the jury was told what the penalty was
> for murder in the first degree, no information was

given by the court as to the penalty for murder in the second degree or manslaughter. It is almost the universal custom in this State for the trial court in a murder case to instruct the jury as to the forms of verdict which they can render. It is true that usually counsel are asked whether they have any objection to the court so instructing the jury, and usually no objection is made. We are of the opinion that if the trial judge sees fit to instruct as to the penalty for some of the verdicts which the jury may render, information should be given as to the penalty for all of the verdicts. However, as there was no erroneous instruction as to the law, we do not consider this reversible error. Article 15, Section 5 of the Constitution of this State of course provides that in the trial of all criminal cases, the jury shall be the judges of law as well as of fact. It has been held many times that the court has the right to advise the jury in a criminal case although not bound or required to do so. If the instruction given is erroneous and the jury have followed it to the injury of the accused, although given in an advisory form, it is subject to an exception and correction on appeal. *Franklin v. State*, 12 Md. 236; *Swann v. State*, 64 Md. 423, 1 A. 872; *Beard v. State*, 71 Md. 275, 17 A. 1044; *Guy v. State*, 96 Md. 692, 699, 54 A. 879; *Esterline v. State*, 105 Md. 629, 636, 66 A. 269; *Dick v. State*, 107 Md. 11, 68 A. 286, 576; *Luery v. State*, 116 Md. 284, 292, 81 A. 681, 685, Ann. Cas. 1913D, 161; *Cochran v. State*, 119 Md. 539, 552, 87 A. 400; *Vogel v. State*, 163 Md. 267, 162 A. 705; *Bevans v. State*, 180 Md. 443, 449, 24 A. 2d 792." *Id.* at 661-62.

In *Glickman v. State*, 190 Md. 516, 526, 60 A. 2d 216 (1948), the record disclosed "that the jury were never hearkened as to their verdict" and "that no objection was made to the verdict on this ground." Our predecessors held "that such objection was waived."

In *Madison v. State*, 200 Md. 1, 87 A. 2d 593 (1952), certain points were not raised in the trial court and it was contended "that defendant's conviction of a capital offense depended on the testimony of one witness . . . and that 'upon the single material issue of fact thus joined, * * * any side issues, any incidents during the trial which might have prejudiced the jury against defendant, took on an importance and significance of unusual proportions not common to ordinary criminal cases, nor even to the usual homicide case.' " Judge Markell there said for the Court:

> "We are told that failure to raise below questions now raised was due to fear of prejudicing defendant before the jury by objections, especially objections which suggest guilt, *e.g.*, the right of the jury to find a verdict without capital punishment. We are aware that some lawyers include such 'taboos' in their 'trial tactics' — and others, who have attained reputation as trial lawyers, make any objections they deem substantial and press them to the end. We are, however, without authority to review errors in trial tactics of defense counsel or to speculate as to possibilities that different tactics might have produced a different result." *Id.* at 8-9.

At another point there was a contention with reference to the advisory charge to the jury which after, as the Court put it, "accurately stating the five verdicts, including 'guilty of murder in the first degree without capital punishment,' then explained the four possibilities, as far as the crime itself [was] concerned, *viz.*, murder in the first degree, murder in the second degree, manslaughter, and not guilty." Judge Markell further said for the Court:

> "Defendant now says that failure to mention again a verdict of guilty of murder in the first degree without capital punishment may have misled the jury and that counsel did not mention the point for fear of prejudicing the jury by suggesting defendant's guilt. In both respects defendant

assumes limitless stupidity on the part of the jury. If defendant wanted mention of a verdict of guilty without capital punishment repeated, he had only to ask and the court would doubtless have repeated it. If the jury might have been prejudiced by such a request, they might have been similarly prejudiced by repetition without request. In this matter there was no error, no ruling, and we see no indication of prejudice." *Id.* at 11.

This was after having said at page 10, "Whatever 'plain error material to the rights of the accused' may include, it does not include bad guesses by counsel whether or not to object to anything done or left undone by the court."

In *Hendrix v. State,* 200 Md. 380, 90 A. 2d 186 (1952), there was no objection to the trial judge's advisory instructions to the jury. Hendrix attempted to invoke the "plain error" provisions of the then applicable rule which contained language virtually identical to that in the present Rule 756 g. This Court found without merit the first objection which concerned the instructions to the jury to which no objection had been entered. The Court declined to review his second contention that there was no legally sufficient evidence to warrant his conviction since he had made no motion in the trial court for a directed verdict.

In *Leet v. State,* 203 Md. 285, 100 A. 2d 789 (1953), yet another defendant failed to move for a directed verdict at the close of the evidence and then attempted to invoke the plain error rule in this Court, it then being Rule 6 (g). Chief Judge Sobeloff there said for this Court:

"We think that Rule 6 (g) was not intended to provide a review of the sufficiency of the evidence, where the point was not raised in suitable form as required by Rule 5A. In *Hendrix v. State, supra,* this Court refused to give to Rule 6 (g) the broad scope which appellant urges. Even the separate concurring opinion of Judge Markell made it plain that the rule should not be misused to entertain an

appellant's 'frivolous afterthought.' We consider this characterization apt and just here." *Id.* at 292.

In *Wolfe v. State*, 218 Md. 449, 146 A. 2d 856 (1958), a defendant elected to represent himself in a trial before a jury. The trial judge attempted to assist the defendant to make a decision as to whether he should testify or remain silent. In so doing, he advised the defendant in the presence of the jury, as stated by this Court's opinion:

> " '[T]he State has produced all the evidence it intends to produce against you. Normally, you would ask me to tell the jury there is no evidence in the case legally sufficient to convict you under the various counts of this indictment. I will treat such a motion as having been made by you and I will deny or overrule the motion.'
>
> " '[I]t is now up to you to decide whether you want to produce any evidence — including yourself, testimony of yours — for the consideration of the jury. * * * [Y]ou don't have to testify if you don't want to. If you don't testify I would think that the case which the State has made out — through the witnesses that have testified — would be pretty strong and substantial against you, and in support of this indictment.' " *Id.* at 452.

There was no motion to withdraw a juror, declare a mistrial, or to strike out the remarks and instruct the jury to disregard them. There was no objection of any kind. The defendant took the stand to testify in his own behalf. He was examined at length by the trial judge and subsequently cross-examined by the state's attorney. During the course of the examination he frankly admitted that he tried to cash the check in question, but denied that he had forged it. In his opening statement to the jury — made against the advice of the trial judge — he had made the same admission and denial. This Court, after noting that "[g]enerally, the prejudicial effect of improper remarks may not be raised on appeal unless preserved by an appropriate objection, *i.e.*, a

motion to withdraw a juror and declare a mistrial, or a motion to strike out the remarks and instruct the jury to disregard them," held:

"[W]e are convinced that the error — which we think was material to the rights of the defendant — was such as the court could not have corrected even if it had attempted to do so. Under such circumstances we think we must of our own motion take cognizance of and correct the plain error by awarding the defendant a new trial even though such error may not have been properly includible in the assignment of errors in this case. Maryland Rule 739 g." *Id.* at 455.

*Reynolds v. State,* 219 Md. 319, 149 A. 2d 774 (1959), was decided just three months after *Wolfe.* Judge Horney again wrote for the Court, saying:

"The State frankly admits that the trial court did not fully instruct the jury as to the particular offenses charged in the indictment, and that it did not explain the real meaning of keeping a disorderly house or the other offenses charged in the indictment. But, the State insists that because the defendant failed to make a timely objection to the court's instructions, she is precluded from raising the objection here. We must agree. See *Hendrix v. State,* 200 Md. 380, 90 A. 2d 186 (1952); *Madison v. State,* 200 Md. 1, 87 A. 2d 593 (1952).

"But the defendant, admitting that she did not seasonably object pursuant to Maryland Rule 739 f, insists that this Court should of its own motion invoke the provisions of Rule 739 g and take cognizance of and correct what she asserts is a plain error material to her rights. We do not agree. In this case it is obvious that the errors complained of are such that the trial court could have — and undoubtedly would have — corrected if the defendant had interposed her objections, as she

should have done, before the jury retired to consider its verdict. *Cf. Wolfe v. State,* 218 Md. 449, 146 A. 2d 856 (1958), (error was such that trial court could not have corrected even if it had attempted to do so). See also *Brown v. State,* 203 Md. 126, 100 A. 2d 7 (1953), (court was not afforded an opportunity to clarify or correct misleading implications)." *Id.* at 324-25.

In *Giles v. State,* 229 Md. 370, 386-87, 183 A. 2d 359 (1962), *appeal dismissed,* 372 U. S. 767 (1963), there was "a contention that the defendants were denied due process and equal protection of the law by the failure of the trial court to give an advisory instruction as to the law, even though the defendants made no request therefor." It was claimed "that even if a jury may determine what principles of law are to be applied in a criminal case, it may not in a capital case be left without any instruction as to the law." The Court pointed out that "the claim overlook[ed] the fact that a defendant may waive his right to require an instruction in a capital case as he may in any other criminal case." Judge Horney said for the Court:

"Although there is nothing in the record to so indicate, it may be assumed that the State's Attorney as well as the defendants, who were represented by an able and experienced attorney, deliberately chose not to request instructions or object to the failure to give them, in order to be in a position to argue the law of the case to the jury without prior or subsequent instructions by the court contrary to what they anticipated arguing or had already argued to the jury. *Cf. Schanker v. State,* 208 Md. 15. 116 A. 2d 363 (1955). But be that as it may, since there was no objection to the absence of an instruction, there is nothing before us to review. Rules 756 g and 885; *Lane v. State,* 226 Md. 81, 172 A. 2d 400 (1961), *cert. den.* 368 U. S. 993 (1962); *Reynolds v. State,* 219 Md. 319, 149 A. 2d 774

(1959); *Bulluck v. State,* 219 Md. 67, 148 A. 2d 433 (1959).

"While Rule 756 g permits this Court of its own motion to take cognizance of and correct any plain error material to the rights of the accused even though not included in the assignment of errors, we are unable to say that the failure to request an instruction or to object to the failure to give one under the circumstances in this case was such an error as this Court ought to take notice of. See *Martel v. State,* 221 Md. 294, 157 A. 2d 437 (1960), *cert. den.* 363 U. S. 849 (1960), where we had occasion to point out that whatever other meanings the term 'plain error' might involve, it does not include appellate alleviation of such unfortunate consequences as may result from a choice of trial tactics. See also *Canter v. State,* 220 Md. 615, 155 A. 2d 498 (1959), and *Madison v. State,* 200 Md. 1, 87 A. 2d 593 (1952).

"Furthermore, even if it is assumed that the defendants had a constitutional right to have the jury instructed as to the law, it is clear that in a case such as this, where they were represented by competent and experienced counsel, even constitutional rights may be waived by not asserting them. *Lenoir v. State,* 197 Md. 495, 80 A. 2d 3 (1951). See also *Heffner v. Warden,* 211 Md. 638, 126 A. 2d 304 (1956), *cert. den.* 353 U. S. 914 (1957), a *habeas corpus* proceeding, in which the same contention as that presented here was raised and rejected." *Id.* at 386-87.

It must be borne in mind that the issue here is not related to guilt or innocence and that in the Maryland system, unlike that prevailing in some states, sentencing power rests in the judge, not the jury, except in those instances where the jury brings in a verdict with the magic words "without capital punishment." Even though the guilty verdict in this case did not contain those words, the trial judge could have

imposed a sentence of 20 years or less had he thought such sentence applicable. We do not know why petitioner's counsel in this case did not request the trial judge to instruct the jury in this matter relative to its right to limit the period of incarceration by adding the words "without capital punishment." It might well have been a matter of trial tactics. Rape and first degree murder historically have been crimes which in this State have been punishable by death or life imprisonment. It could well be that trial counsel for Dimery reasoned that the average juror would be aware of this penalty, as most citizens were, and such juror would conclude after *Furman* that the only possible sentence upon a guilty verdict would be life imprisonment. Counsel might have further reasoned that a jury finding any ground for sympathy with the defendant would rebel against this prospect by bringing in a verdict of not guilty, rather than one of guilty, but if the jury knew that by its recommendation it could restrict punishment to imprisonment for 20 years, a sympathetic jury might be more likely to adhere to this middle ground. On the other hand, it could have been pure oversight. Be that as it may, if there is not to be chaos in the courts there must be some order in the conduct of proceedings. We must not lose sight of the admonition of Mr. Justice Frankfurter in his concurring opinion in *Johnson v. United States*, 318 U. S. 189, 202, 63 S. Ct. 549, 87 L. Ed. 704 (1943), that we should not "turn a criminal appeal into a quest for error." It is much easier to think and to pick out errors in the isolation of an appellate bench and the seclusion of an appellate judge's chambers than it is to think in the heat and tension of a jury trial, particularly a protracted jury trial as was this one. As every bleacher fan and every Monday morning quarterback knows, it is easy to second guess any given situation. We are of the opinion that the sound rule to follow, the rule which protects the rights of litigants, but at the same time serves the orderly administration of criminal justice, is that we will not take cognizance under Rule 756 g of an error such as that concerning which complaint is made here. Dimery was represented by competent and conscientious counsel. We

have no doubt that a timely objection would have brought prompt correction by the trial judge. There having been no such objection, we regard the point as waived, recalling the words of Judge Markell in *Madison v. State,* 200 Md. 1, *supra:*

> "Whatever 'plain error material to the rights of the accused' may include, it does not include bad guesses by counsel whether or not to object to anything done or left undone by the court." *Id.* at 10.

*Judgment affirmed.*

*O'Donnell, J., dissenting:*

I regret that in this sordid and twice-tried case I must dissent from the conclusion reached by my learned brethren.

Just as under an indictment charging murder in the statutory form prescribed in Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 616, the jury has a right to return any one of five verdicts: (a) guilty of murder in the first degree, (b) guilty of murder in the first degree, "without capital punishment" (as provided in Art. 27, § 413), (c) guilty of murder in the second degree, (d) not guilty of murder, guilty of manslaughter [1] and (e) not guilty (*Jones v. State,* 182 Md. 653, 661, 35 A. 2d 916, 920 (1944); *Gray v. State,* 6 Md. App. 677, 684, 253 A. 2d 395, 399 (1969); *McFadden v. State,* 1 Md. App. 511, 516, 231 A. 2d 910, 913 (1967)), under an indictment for rape under Art. 27, § 461, the jury may return one of three verdicts: (a) guilty, (b) guilty, without capital punishment (as provided in Art. 27, § 463) and (c) not guilty (*see Presley v. State,* 257 Md. 591, 598-99, 263 A. 2d 822, 826 (1970); *Domneys v. Warden,* 232 Md. 659, 660-61, 194 A. 2d 443, 443-44 (1963), *cert. denied,* 377 U. S. 949 (1964).)

In *Presley v. State, supra,* we held that "It is proper for the judge to instruct as to the penalty which may follow a

---

1. *See* Weighorst v. State, 7 Md. 442 (1855); and State v. Flannigan, 6 Md. 167 (1854).

specified verdict and in a rape case to state all the possible penalties." 257 Md. at 599, 263 A. 2d at 826. In *Presley*, in giving what this Court found to be "a fair and accurate charge," the trial court had instructed the jury:

> "[I]t could find Presley not guilty or guilty, that if it found guilt it could limit the imprisonment the court could impose to not more than twenty years by adding the words 'without capital punishment' to its verdict, that if it did not wish to limit the length of the sentence it could bring in a verdict of guilty without adding qualifying words and in such case the sentence could be not less than eighteen months and from eighteen months to twenty-one years or life imprisonment, and that the jury must decide which of two guilty verdicts it would return, if it determined Presley to be guilty, before the court could impose a proper penalty." 257 Md. at 598-99, 263 A. 2d at 826.

*See also Domneys v. Warden, supra,* where this Court, in reviewing an instruction given the jury by the trial court, held that there could be no real doubt that the jury was made fully aware that, if it deemed it proper, it could prevent the imposition of the maximum penalty by qualifying its verdict of guilty by the phrase "without capital punishment."

As the majority notes, in citing from *Jones v. State, supra,* that we there pointed out that "It is almost the universal custom in this state for the trial court in a murder case to instruct the jury as to the forms of verdict which they can render. It is true that usually counsel are asked whether they have any objection to the court so instructing the jury and usually no objection is made." 182 Md. at 661, 35 A. 2d at 920.

As a result of the decision of the United States Supreme Court on June 29, 1972, in *Furman v. Georgia,* 408 U. S. 238, this Court held in *Bartholomey v. State,* 267 Md. 175, 297 A. 2d 696 (1972), that the imposition of the death sentence for murder under any of the existing discretionary statutes in

Maryland which authorized the imposition of capital punishment, but which did not require that penalty, was unconstitutional as in violation of the Eighth and Fourteenth Amendments to the United States Constitution, without regard to the nature of the offense, the particular circumstances under which the crime was committed or the particular procedure followed in imposing the death sentence. In *Bartholomey v. State, supra,* the appellant had been sentenced to capital punishment for first degree murder. In a companion case, *Sterling v. State,* 267 Md. 175, 297 A. 2d 696 (1972), the death sentence, which was vacated, had been imposed on the appellant following his conviction for rape.

As a result of these decisions abolishing the imposition of the death penalty, it appears that the provisions in Art. 27, § 413, under which a jury might add the words "without capital punishment" to a verdict of murder in the first degree and thus maximize the penalty as life imprisonment, were rendered nugatory; as a result of *Furman* and *Bartholomey* life imprisonment is the sole remaining penalty for murder in the first degree. However, the provisions of Art. 27, § 463, notwithstanding these decisions, remain viable in that if a jury adds the words "without capital punishment" to a verdict of guilt in a rape case the defendant — although no longer subjected to possible capital punishment — is subjected to maximum confinement for 20 years. *England v. State,* 274 Md. 264, 334 A. 2d 98 (1975).

In a rape case, upon a verdict of guilty "without capital punishment," it was held in *LaGuardia v. State,* 190 Md. 450, 454-55, 58 A. 2d 913, 915 (1948) — where the history of the statute is reviewed — that the trial court was not only prevented from imposing capital punishment (as then permissible), but was prevented as well from imposing life imprisonment and that the defendant could not be sentenced to a term of more than 20 years. Thus, even though in a murder case a verdict of "guilty of murder in the first degree 'without capital punishment' " appears to have been rendered inoperable, in a rape prosecution the jury is still entitled to render one of three possible verdicts, including a

verdict of "guilty 'without capital punishment' " under the provisions of Art. 27, § 463 and thereby limit the penalty to imprisonment for not more than 20 years.

I must disagree with the majority in their conclusion that the holdings in *Calton v. Utah*, 130 U. S. 83 (1889), were limited to "statutory grounds." As I read it, the decision was predicated on the deprivation "of a substantial right" of the defendant which today is equated with "due process of law." *See Lisenba v. California*, 314 U. S. 219, 236 (1941).

Mr. Justice John Marshall Harlan, in *Calton*, in writing for that Court, stated:

"If their [the jury's] attention had been callea to that statute, it may be that they would have made such a recommendation, and thereby enabled the court to reduce the punishment to imprisonment for life. We are of opinion that the court erred in not directing the attention of the jury to this matter. The statute evidently proceeds upon the ground that there may be cases of murder in the first degree, the punishment for which by imprisonment for life at hard labor will suffice to meet the ends of public justice. Its object could only have been met through a recommendation by the jury that the lesser punishment be inflicted, and it is not to be presumed that they were aware of their right to make such recommendation. The failure of the court to instruct them upon this point prevented it from imposing the punishment of imprisonment for life, even if, in its judgment, the circumstances of the case rendered such a course proper. It was well said in the dissenting opinion of Mr. Justice Henderson, in the Supreme Court of the Territory [Utah], that by the action of the District Court 'the *prisoner was deprived of a substantial right.* The determination of the question' as to whether he should suffer death or imprisonment was one of vital consequence to him. The jury to whom the statute commits the determination of

that question, at least in part, *were not informed of their duty and responsibility* in the matter *so as to require them to exercise their judgment and discretion in relation to it,* and by the verdict they rendered the court had none.' These views are in accordance with the *fundamental* rules obtaining in the trial of criminal cases involving life." (Emphasis supplied.) 130 U. S. at 86-87.

The Supreme Court of Pennsylvania, in *Commonwealth v. Madaffer,* 291 Pa. 270, 139 A. 875 (1927), held that upon the trial of an indictment for murder the trial judge, *whether requested or not,* must instruct the jury that should they find the defendant guilty of murder in the first degree they must, under the statute, determine whether the penalty should be either death or life imprisonment. In recognizing that it was the "right of the defendant" to have the jury so instructed, that court stated:

"It is true that, under some circumstances, even in a capital case, the failure to ask at trial for specific instructions to the jury will bar a subsequent complaint of an omission so to charge [citations omitted], but this is not the rule where, as here, the omitted instruction relates to a specific duty required of the jury in a matter material to the accused, particularly where, as here, the matter omitted relates to a recent and important change in the law.

When we consider the charge as a whole, the failure to instruct here complained of, may justifiably be classed as more than a mere omission. . . ." 291 Pa. at 273, 139 A. at 875.

In *Webb v. State,* 154 Ark. 67, 242 S. W. 380 (1922), in a murder prosecution, no request had been made for the court to instruct the jury that if they found the defendant guilty of murder in the first degree they were entitled to fix his punishment at death or life imprisonment. The Supreme Court of Arkansas initially adopted the view here followed

by the majority that the failure to request such an instruction rested "upon the same principle as the failure to give any other instruction of law applicable to the issues involved in the trial," and "adhered to the rule that it is not error for a trial court to fail to give an instruction on a given subject unless the court is requested to do so." However, on a rehearing the court completely reversed its course, set aside the judgment of capital punishment and reduced the appellant's sentence to life imprisonment. That court stated:

> "The statute provides that the jury, and not the court, shall have the right to fix the punishment, and it follows that, under such a statute, it is necessary to inform the jury of the punishment imposed by the statute in order that it may properly exercise the right vested in it. If the court had explained to the jury the distinction and difference of penalty of murder in the first degree, the finding of the jury might have been different. By not telling the jury that it had a right to fix the punishment of the defendant at life imprisonment, the latter was deprived of a substantial right. The right to exercise the discretion under the statute was given to the jury, and the court could not exercise it." 154 Ark. at 72-73, 242 S. W. at 383.

> \* \* \*

> "In the present case the finding of the jury might have been different, had the court explained to the jury the alternative right given it by the statute in fixing the punishment of the accused. Therefore, the majority of the court is of the opinion that, the punishment prescribed by the statute being alternative in its character, and the statute having made it the duty of the jury to exercise its discretion in fixing the punishment, it was part of the law applicable to the case, and the trial court erred in not charging the jury in regard to the discretion to be exercised by it in case the accused

was found guilty of murder in the first degree." 154 Ark. at 75, 242 S. W. at 384.

In *Vickers v. United States*, 1 Okla. Cr. 452, 98 P. 467 (1908), a United States statute (29 Stat. 487) provided that in all cases where an accused is found guilty of murder or of rape the jury may qualify their verdict by adding thereto "without capital punishment" and upon the return of such a verdict the person convicted shall be sentenced to life imprisonment. In that case the appellant had been convicted of rape and although no request for such an instruction was made in the trial court, the court, *sua sponte*, took notice of such error. In finding that "the defendant was entitled to have the question of a qualified verdict submitted to the jury in this case," the court stated:

> "Although not urged upon the trial, nor here, we deem it our duty to pass upon and decide this question, as that which the law makes essential in proceedings involving the deprivation of life cannot be dispensed with or affected by the consent of the accused, much less by his mere failure, when on trial, to object to unauthorized methods. It seems that the court did not instruct the jury as to their right to return a qualified verdict." 1 Okla. Cr. at 457, 98 P. at 469.

The Supreme Court of Appeals of West Virginia in *State v. Chaney*, 117 W. Va. 605, 186 S. E. 607 (1936), overruled their earlier decisions in *State v. Cobbs*, 40 W. Va. 718, 22 S.E. 310 (1895) (that it was not error, after a jury returned a verdict of murder in the first degree, but before discharge of the jury, to then refuse an instruction informing the jury of their discretion under the statute in limiting the penalty), and *State v. Beatty*, 51 W. Va. 232, 41 S. E. 434 (1902) (where it was held that there was no duty on the trial court to give such an instruction without request), and held, in rejecting these precedents, that it was the *duty* of the trial court, even without any such request, to inform the jury of their authority under the statute to determine whether the

accused, if found guilty of murder in the first degree, shall be punished by death or life imprisonment. That court concluded that in view of the fact that it was for the jury and not the court to limit the punishment which could be imposed on the defendant, that the trial court erred in so failing to advise the jury of their power and deprive the defendant of a "substantial right."

In *State v. Zuro Yamashita*, 61 Utah 170, 211 P. 360 (1922), where — as under the facts of this case — the asserted error in failing to charge the jury under a statute which permitted the jury to make a recommendation was not asserted until the motion for new trial was filed in the District Court and the case had been appealed, the Supreme Court of Utah, in granting a new trial, held "that a failure to charge the jury that they may recommend imprisonment for life invades a substantial right to the defendant and constitutes fatal error." 61 Utah at 171, 211 P. at 360.

Although all the preceding cases have involved the right of the jury to limit, upon conviction, a defendant's sentence to life imprisonment rather than subjecting him to capital punishment, the rule has been equally applied in non-capital cases. *See Harris v. State*, 59 Ga. 635 (1877), where the defendant, convicted of "hog stealing," was subject to confinement in the penitentiary "unless the prisoner be recommended to mercy" by the jury under a statute, in which event he was subjected to punishment of fine, jail imprisonment or work in a chain gang. The trial court did not charge the jury concerning the right to make this recommendation and no request was made for such an instruction. In reversing his conviction and in holding that the court should have given such instruction, whether requested or not, the court stated:

> "[I]t is clear that it is for the jury not only to pass upon the guilt of the accused, but to fix the punishment, to grade the offense, to determine whether it be felony or misdemeanor. This is an important right of the accused, to have his offense graded and the penalty of the law fixed by the jury.

The statute gives him the right, but the court below took it from him by not telling the jury that the law gave it to him, and that they must pass upon his guilt, the nature and extent of it, so as to send him to the penitentiary, or to jail, or chain-gain [sic], or perhaps to subject him only to a fine. It seems just as necessary to give the charge in such a case, as in the case of homicide to give its various grades." 59 Ga. at 636.

See also Thompson v. State, 151 Ga. 328, 106 S. E. 278 (1921), on certiorari from the Court of Appeals of Georgia, reversing its decision in 25 Ga. App. 483 and holding that it was error for the court to fail to instruct the jury on the trial of one charged with assault with intent to commit murder that in the event of a conviction they could recommend that the defendant be punished "as for a misdemeanor" under that state's indeterminate-sentence act.

I cannot find persuasive the holdings in People v. Gonzales, 187 Cal.App. 2d 472, 10 Cal. Rptr. 12 (Dist.Ct.App., 3rd Dist. 1960); Ferguson v. State, 90 Fla. 105, 105 So. 840 (1925); Penn v. State, 62 Miss. 450 (1884); and State v. Adams, 68 S. C. 421, 47 S. E. 676 (1904), all cited by the majority in support for their holding that the failure on the part of the appellant to request such an instruction precluded an appellate review of the question. In Gonzales the District Court of California held that it was not reversible error for the trial court, to instruct the jury in a narcotics case, that they might find the defendant guilty of having sold narcotics, or not guilty of sale, or guilty of possession — in the absence of a request for an instruction concerning a verdict of "not guilty of possession." In Ferguson the Florida court held that the failure to request an instruction "for mercy" in a capital case which would have operated to limit the defendant's penalty to life imprisonment was not error since the trial court, even in the absence of such a jury recommendation, nonetheless had the discretion to sentence the defendant to life imprisonment. The decision completely overlooks the fact that had the jury

by their verdict recommended "mercy" the trial court would possess no residual discretion to sentence the defendant to other than life imprisonment. In *Penn* the jury returned a verdict of guilty, and had the right by their verdict in a capital case to limit the penalty to life imprisonment; in announcing their verdict of guilty they merely "plead the mercy of the court." Counsel for the defendant had not requested an instruction concerning such a limitation on the penalty. Finding that the exhortation added by the jury for mercy was mere surplusage, the court held that there was nothing, in addition to the verdict, or what took place when it was announced, to induce a belief that the jury had intended to fix the defendant's punishment at life imprisonment. In *State v. Worthy*, 239 S. C. 449, 477, 123 S.E.2d 835, 849 (1962), the court suggested "that the *dictum* in the majority opinion in *State v. Adams*, 68 S. C. 421, 47 S. E. 676 [1904] to the effect that the right to a charge on the statute may be so waived in a capital case is not consonant with the now settled rule *in favorem vitae.*"

In my view the trial court was obligated in its instructions to the jury — whether requested or not — "to cover the various possible verdicts." *See Beard v. State*, 216 Md. 302, 320, 140 A. 2d 672, 682 *cert. denied*, 358 U..S. 846 (1958). Even though the appellant made no request, under the provisions of Art. 27, § 463, that the jury be instructed that they had the right, if they found the defendant guilty, to add to their verdict the words "without capital punishment," it was plain error not to have submitted to the jury such an option as one of the three possible verdicts available to it. The defendant, by his election of a jury trial, was entitled to a complete jury trial and was entitled as well that the jury be informed of the right under the statute to render such a verdict. When the trial court failed to properly submit such a possible verdict to the jury it did not inform them of their right[2] to render such a verdict and this deprived the appellant — to his prejudice — of a "substantial right." It

---

2. *See* State v. Simmons, 234 N. C. 290, 291, 66 S.E.2d 897, 898 (1951), holding that the jury possess such an "unbridled discretionary right."

was for the jury alone to render the verdict in the appellant's case. *See Presley v. State, supra.* Under the provisions of the statute, by adding the words "without capital punishment" the jury is also entitled to fix the maximum penalty. Indeed, it might be argued with some force that the trial court's failure to inform the jury of this statutory right prevented the defendant from having been afforded a "complete" jury trial as guaranteed him under Art. 5 of the Maryland Declaration of Rights.

Nor can I agree with the conclusion reached by the majority — inferentially based as it is on a matter of trial tactics — that there was an affirmative waiver by the appellant in not requesting such an instruction.

At the outset of the instructions to the jury the trial judge (Parker, J.) told the jury that he would give them "in my own handwriting each of these counts and [the] possible verdicts as to each and every one prior to your going in the jury room so that you will know specifically what the defendant is charged with as to each count and the possible verdicts that could apply to those counts." There is no suggestion anywhere in the record that these handwritten "possible verdicts" were ever exhibited to counsel, contrary to the "usual custom" mentioned in *Jones v. State, supra,* or that counsel were ever afforded any opportunity before instructions and argument to comment thereon. The handwritten "possible verdicts" were handed to the jury just before they left the jury box to commence their deliberations and it was only then that the trial judge undertook to read them to the jury — lest they be unable to decipher his writing — and told them, "Criminal trials 11,565, count 1, is the crime of rape; possible verdict is either guilty or not guilty. Count 3 is assault and battery; the possible verdict would be either guilty or not guilty. Count 6, the crime of arson; possible verdict is guilty or not guilty. Count 9 is grand larceny; possible verdict is guilty or not guilty. Criminal trials 11,586, crime of attempted murder; possible verdict is guilty or not guilty." It would appear in the context and sequence of events that at that stage of the case there was little, if any, opportunity for counsel — if then

aware of the failure to include the third possible verdict on Count 1 in Criminal No. 11,565 — to have noted an exception to the possible verdicts submitted. As pointed out in *Johnson v. Zerbst*, 304 U. S. 458 (1938), a waiver is an intentional relinquishment or abandonment of a known right or privilege and the courts do not presume acquiescence in the loss of such fundamental rights. *See also* 21 Am.Jur.2d *Criminal Law* § 219 (1965). It is here significant to note that in *Smith v. State*, 240 Md. 464, 480, 214 A. 2d 563, 572 (1965), Judge Oppenheimer, in listing some of the various constitutional rights that defendants had previously been deemed to have waived, made no mention of the right to have the jury correctly informed of the possible verdicts available to it as among them.

To me the failure to grant an instruction entitling the jury, in returning a verdict of guilty, to add the words "without capital punishment" is completely different from those cases cited by the majority where, as in *Reynolds v. State*, 219 Md. 319, 149 A. 2d 774 (1959), the court, without objection, had failed to define for the jury the elements of the crime charged.

In the view I have of the case, this Court should, under Maryland Rule 756 g, take cognizance of the plain error committed by the trial court in failing to instruct the jury under the provisions of Art. 27, § 463, resulting as it did in the denial unto the appellant of a "substantial right" and the denial of the procedural due process of law. *See Rowe v. State*, 234 Md. 295, 199 A. 2d 785 (1964); *Wolfe v. State*, 218 Md. 449, 146 A. 2d 856 (1958).

I would reverse the judgment of the Court of Special Appeals.

Judge Digges authorizes me to state that he concurs in the views expressed in this dissent.